(63 South. 851.)

No. 19,587.

BRIGGS v. McLAUGHLIN (RAX, Intervener).

(Dec. 15, 1913.)

*(Syllabus by the Court.)*

1. SLAVES (§ 14*)—MATERNAL DESCENT—EVIDENCE—INHERITANCE.

Under the law, as changed by the legislation of 1870, an illegitimate child, born of unmarried negro slave parents, may prove acknowledgment of his maternal descent by any legal evidence, and is not restricted, with respect thereto, to the notarial act of acknowledgment provided by C. C. art. 203; the proof otherwise made being equivalent to such "acknowledgment" and being sufficient to establish the status of the party as the natural child and heir of his mother, entitled to inherit her estate to the exclusion of a collateral relative.

[Ed. Note.—For other cases, see Slaves, Cent. Dig. § 60; Dec. Dig. § 14.*]

*(Additional Syllabus by Editorial Staff.)*

2. BASTARDS (§ 1*)—"ILLEGITIMATE CHILD"—"BASTARD"—"NATURAL CHILD."

"Illegitimate children" are those born out of wedlock; and, unless they have been acknowledged by their parents, they are called "bastards." Those who are so acknowledged by both or either of their parents are called "natural children."

[Ed. Note.—For other cases, see Bastards, Cent. Dig. §§ 1–3; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 4, p. 3390; vol. 1, pp. 717, 718; vol. 8, p. 7588; vol. 5, p. 4665.]

Appeal from Thirteenth Judicial District Court, Parish of Rapides; W. F. Blackman, Judge.

Action by Bob Briggs against Washington McLaughlin, administrator, and M. Rax intervenes. Judgment for plaintiff, and defendant and intervener appeal. Affirmed.

Robt. P. Hunter & Sons, of Alexandria, for appellants. R. H. McGimsey, of Alexandria, for appellee.

MONROE, J. Plaintiff sues to be recognized as the only surviving child and sole heir of Tulip McLaughlin, deceased, wife of Washington McLaughlin, and, as such, to be put in possession of her estate. He also prays that letters of administration issued to defendant be revoked, as having been illegally issued. Defendant alleges that plaintiff was an illegitimate and unacknowledged child of the decedent, and is not entitled to inherit from her; also, that the succession owed debts and was legally and properly placed under his administration. The intervener appears as the child of a half-brother of the decedent, joins the defendant in his attack upon the status of plaintiff, and seeks to be recognized as the heir at law of the estate.

The litigants are colored people and were born slaves. The mother of plaintiff, "Tulip" (Smith), was not married to his father, Robert Briggs, when plaintiff was born (in 1849), or at any time afterwards; but, it is admitted, and is placed beyond dispute by the evidence, that she was his mother, and that, from the date of his birth until her death, in (about) 1909, she openly, publicly, and uninterruptedly recognized him as her son, as

did also the other parties to this litigation. It is also admitted, and proved, that the decedent left no other children, and it is not asserted that she left any ascendants. The main question to be decided, then, is (one or two questions of minor interest being also presented) whether plaintiff inherits the estate of the decedent to the exclusion of his collateral relative, Marshall Rax.

[1, 2] Under our law "illegitimate children" are those who are born out of wedlock; and, unless they have been acknowledged by their parents, they are called "bastards." Those who are so acknowledged, by both, or either, of their parents, are called "natural children." With the exception of adulterous or incestuous bastards, illegitimate children may be legitimated by their parents, or either of them (when they have been acknowledged), either by a subsequent marriage, or a notarial act, executed by either parent, declaring such intention; but, though the law declares that when the legitimation is effected by subsequent marriage the child has the same rights as though born during marriage, it also declares that "no parent can legitimate his or her natural offspring" by notarial act "when there exists on the part of such parent legitimate ascendants or descendants." C. C. arts. 180, 181, 182, 183, 198, 199, 200.

Natural children, whether legitimated or not, inherit from their mother, "when they have been duly acknowledged by her, if she has left no lawful children or descendants, to the exclusion of her father and mother and other ascendants or collaterals or lawful kindred." C. C. art. 918.

We then arrive at the question whether the plaintiff in this case was "duly acknowledged," by his mother, within the meaning of the law.

The old law (the Code of 1825) declared that:

"The acknowledgment of an illegitimate child shall be made by a declaration executed before a notary public, in presence of two witnesses, whenever it shall not have been made in the registering of the birth or baptism of such child. No other proof of acknowledgment shall be admitted in favor of children of color." Code of 1825, art. 221.

It will be observed that the special provision concerning children of color leaves the article open to the interpretation that, as to white children, other proof of acknowledgment than the notarial act would be admissible, and that, as to children of color, such other proof would be admissible, were it not for the last paragraph in the article; and other articles in the same Code provide as follows:

"Art. 226. Illegitimate children, who have not been legally acknowledged, may be allowed to prove their paternal descent, provided they be free and white. Free illegitimate children of color, may also be allowed to prove their descent from a father of color only."

Article 227 prescribes the manner in which proof of natural paternal descent may be made, and thereafter we find:

"Art. 230. Illegitimate children of every description may make proof of their natural maternal descent, provided the mother be not a married woman. But the child who will make such proof shall be bound to show that he is identically the same person, as the child whom the mother brought forth."

Dealing with a case which arose under the Code thus quoted, this court, speaking through Mr. Justice Bullard, said that, under the eleventh law of Toro:

"It was considered by the ablest commentators that proof of birth was equivalent to acknowledgment on the part of the mother, and proof of cohabitation with the mother, as the sole concubine, tantamount to an acknowledgment of paternity."

And the opinion proceeds:

"But it is urged that the Code has introduced a new rule on this subject, and that, without formal acknowledgment by notarial act or in the baptismal register, the natural child is without capacity to inherit. Article 221 declares that 'the acknowledgment of an illegitimate child shall be made by a declaration before a notary public and two witnesses whenever it shall not have been made in the registering of the birth or baptism of such child.' If

this article stood alone, we should perhaps be compelled to say that the subsequent articles, under the head of Successions, in which the due acknowledgment is spoken of, referred to this as the sole and exclusive evidence of natural descent, and that, whatever may have been the condition or rights of the parties under the previous legislation of the country, this right to inherit as natural children under the Code would depend upon their furnishing this exclusive evidence of their capacity. But this article does not stand alone. Article 226 provides that 'illegitimate children who have not been legally acknowledged may be allowed to prove their paternal descent provided they be free and white.' And, with respect to the mother, article 230 declares that 'illegitimate children of every description may make proof of their maternal descent, provided the mother be not a married woman.' The article 227 is substantially a re-enactment of the law of Toro above referred to. The words used in article 221 are not prohibitive, and, so far from declaring that a declaration before a notary shall be the only proof permitted, the Code expressly permits other modes of proof, both of paternal and maternal descent, without any restriction as to the purpose for which it may be allowed. Although there may be cases in which the child may prove his paternal descent without being entitled to inherit, as in cases of adulterous bastards, who may be entitled to alimony, yet as relates to the mothers the rule under the law of Toro was different, and the child born out of marriage, whether spurious or natural, whether by an acknowledged or unknown father, 'salvo si los tales hijos fueren de damnado y punible ayuntamiento,' were called to her inheritance to the exclusion of all except her legitimate children. * * * Even under the Code Napoleon, which contains enactments much stronger than ours, it seems to be the general opinion of commentators that proof of maternity may be made in all cases, and that this forced acknowledgment has the same effect as the voluntary one in authentic form. 3 Duranton, 235, 236. 253; Toullier, Nos. 940, 950: 4 Favard de L'Anglade, 742; Chabaud, De Successions. 342." Lange et al. v. Richoux et al., 6 La. 560.

The doctrine thus enunciated was applied in the case then before the court, and subsequently, in Jones v. Hunter, 6 Rob. 241, and in Jobert et al. v. Pitot, Ex'r, 4 La. Ann. 305, to the extent that the court held that:

"The acknowledgment of an illegitimate child, which the law requires to be executed before a notary in the presence of two witnesses, when it has not been made in the acts of birth or baptism, is that of the father. Illegitimate children may prove their natural maternal descent, and the acknowledgment of their mother, by any legal evidence. C. C. arts. 221, 230."

Some two years later, in the case of Dupré v. Caruthers, 6 La. Ann. 156, it was held (Preston, J., being the organ of the court) that: Natural children could not take, by inheritance, the property of a deceased parent, unless they had been duly acknowledged, and that due acknowledgment meant acknowledgment by notarial act, or by registry of birth or baptism. The court then consisted of four members, two of whom (Eustis, C. J., and Slidell, J.) concurred in the "legal results" of the opinion handed down, whilst the other (Rost, J.) dissented. Thereafter, and up to the year 1870 (when the present Code and other legislation was adopted), and even since then, the jurisprudence has not, perhaps, been as firmly settled as would seem desirable, the court, in some instances, having followed the one precedent, and, in other instances, the other; though the weight of authority, at this time, no doubt, sustains the doctrine of the case of Lange v. Richoux. In the meanwhile, some changes, material to the question to be here decided, have been made in the law.

By Act 210 of 1868 (page 278) it was provided that all persons who had previously contracted private, or religious, marriages, or had lived together as man and wife, might make such marriages valid, binding, and retroactive in effect, by executing an authentic act, declaring such intention, and giving the names, sex, and ages of the children born of such previous connection, which children thereby became, at once, acknowledged and legitimated and entitled to all the rights of legitimate children. It was required that the authentic act should be executed within two years from the date of the statute, and there was a proviso from which it would appear that the main purpose of the statute was to enable persons of the white and colored races, who had been living to-

gether, to legalize their relations and legitimate their children. In the adoption of the Revised Civil Code, in 1870, article 221 of the Code of 1825 received the number 203, and was amended and re-enacted so as to read:

"Art. 203. The acknowledgment of an illegitimate child shall be made by a declaration executed before a notary public, in presence of two witnesses, by the father and mother or either of them, whenever it shall not have been made in the registering of the birth or baptism of such child."

Comparing the old article with the new, it will be seen that the words "by the father or mother, or either of them," which were not in the old article, have been made part of the new one. It will also be seen, and the omission has an important bearing in this case, that the paragraph, "No other proof of acknowledgment shall be admitted in favor of children of color," which was the concluding paragraph of the old article, has been omitted from the new one.

Another change, of a similar character, was made in the re-enactment (as article 208) of the old article 226, which was reproduced in the Revised Code, with the final paragraph, reading, "free illegitimate children, of color, may also be allowed to prove their descent from a father of colour only," omitted. So that, in the one case, the prohibition to the effect that, as to children of color, no other proof of acknowledgment, by the father and mother or either of them, than the notarial act, shall be admitted, was removed; and, in the other case, the limitation, as to children of color, that they should be permitted to prove their paternal descent from a father of color, only, was also omitted.

Still another change was made, by Act No. 68 of 1870, which (with all other "acts and joint resolutions" of that session) was (by Act No. 50 of the session) given precedence of the Revised Statutes, the Revised Civil Code, and the Revised Code of Practice, then under consideration and subsequently adopted. Act No. 68 reads as follows:

"That natural fathers and mothers shall have power to legitimate their natural children, by acts declaratory of their intentions, made before a notary public and two witnesses: Provided, that there existed at the time of the conception of such children, no other legal impediments to the intermarriage of their natural father and mother except those resulting from color or the institution of slavery."

Section 2 of the act repeals all conflicting laws, save Act 210 of 1868; but, as that act expired, by its own limitation, in two years from the date of its passage, it is evident that the act of 1870 was intended as a substitute for it. To the foregoing it may be added that, by Act No. 54 of 1894, marriages between white persons and persons of color is prohibited, under penalty of absolute nullity.

If then the law as it stood prior to 1870 was susceptible of the construction that an illegitimate white child might prove its maternal descent, and, in so doing, establish the "due acknowledgment" required for its legitimation, a fortiori is the law, as it now stands, susceptible of the construction that a colored child may pursue the same course with the same result, since the special restriction, attached to the old article 221, to the effect that "no other proof of acknowledgment" (save the notarial act) "shall be admitted in favor of children of color," has been removed and is no longer to be found in the law. Beyond that, and without reference to that particular change, the doctrine of the case of Lange et al. v. Richoux et al. has, more than once, been recognized and approved by this court since the case of Dupré v. Caruthers was decided, both before and since the legislation of 1870, and that decision has been ignored, while the decision in Lange v. Richoux has been approved and followed.

Thus, in Hart v. Hoss & Elder, 26 La. Ann. 99, it was said:

"As to white children, we conclude that the interpretation of article 221, made in Lange et al. v. Richoux et al., is correct. See, also, Jones v. Hunter, 6 Rob. 236, where it was held that an acknowledgment in a will, in Mississippi, not passed before a notary, was valid."

In Succession of Hébert, 33 La. Ann. 1103, Bermudez, C. J., as the organ of the court, said:

"This court has decided that the requirements of written recognition did not apply to white or colored children descending from white or colored parents; that the rule applied exclusively to children of color, descending from a white father. * * * It has also decided that, under article 230 of the same Code (Code of 1825), illegitimate children of every description might make proof of their maternal descent, where the mother was not a married woman. In Pitot v. Jobert (should be Jobert et al. v. Pitot et al.), 4 La. Ann. 305, the court distinctly said: 'The acknowledgment of an illegitimate child, which the law requires to be executed before a notary in presence of two witnesses, when it has not been made in acts of birth or baptism, is that of the father.' * * * 33 La. Ann. 1104. We do not consider as shaking the authority in 4 La. Ann. 305, the dictum of Mr. Justice Preston in the case of Dupré v. Caruthers, 6 La. Ann. 158, which was not the opinion of the three judges composing the majority. Chief Justice Eustis and Justice Slidell merely concurred in the legal results presented in the opinion and decree, while Justice Rost dissented altogether. Whatever was said in the opinion on the subject of the necessity for an acknowledgment by the mother in one of the modes pointed out by article 221, C. C., was, besides, uncalled for and unnecessary in a case in which the question involved was as to the acknowledgment by a father of his natural daughter."

In Succession of Fortier, 51 La. Ann. 1584, 26 South. 554, the court quotes extensively, and with approval, from the opinion in Lange v. Richoux, as supporting the proposition that the acknowledgment of illegitimate children by a declaration before a notary is not the only method of acknowledgment recognized by the Code.

In Bourriaque et al. v. Charles, 107 La. 220, 31 South. 758, it was said:

"The proof of acknowledgment has not been confined to article 203, C. C., and does not exclude the provisions of articles 207 and 208, C. C. Lange et al. v. Richoux et al., 6 La. 570."

In the case thus cited it was held that:

As "between heirs, acknowledged as required by article 209, C. C., and collateral heirs, not acknowledged at all, the court holds that the former are entitled to inherit."

In Succession of Vance, 110 La. 760, 34 South. 767, though the court held that the proof was insufficient to establish the acknowledgment of a natural daughter, by a father, it distinctly declared (110 La. 764, 34 South. 769) its adherence "to the jurisprudence authorizing methods of acknowledgment of illegitimate children otherwise than as laid down in Civil Code, art. 203," etc.

In Succession of Davis, 126 La. 183, 52 South. 266, the cases of Lange v. Richoux and Jobert v. Pitot are cited and quoted as authority for the proposition, the soundness of which is not questioned, that natural children may prove their maternal descent by any legal evidence, and that such proof is equivalent to acknowledgment.

The judgment appealed from recognizes plaintiff to be the sole heir of his mother and orders that he be sent into possession of the property of her succession, revokes the orders by virtue of which the succession was subjected to administration, rejects plaintiff's demand against the intervener for rents, and reserves to the defendant, Wash. McLaughlin, his rights with respect to a certain tax title set up by him. We find no error in these rulings. The judgment of the district court is therefore affirmed.

LAND, J., concurs in the decree.