## FENNELL v. UNITED STATES.
### No. 7005.

Circuit Court of Appeals, Fifth Circuit.
Dec. 11, 1933.

Hal Browne and David Weintraub, both of San Antonio, Tex., for appellant.

W. R. Smith, Jr., U. S. Atty., of San Antonio, Tex.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Louis Raymond died in France in 1919 a soldier of the United States, having in force war risk insurance payable to himself. Earl Fennell, claiming to be his brother and sole heir, was in 1931 appointed administrator in Texas. His claim to the insurance being re-

jected by the United States, he sued both in his individual and representative capacity, lost his case before the judge sitting as jury, and appealed. The facts were agreed on, and in brief are that Louis Raymond and Earl Fennell were born in Texas of an unmarried woman, Ellen Dukes. She died, never having had any other children or a husband. Raymond later moved to Louisiana and was domiciled there when he entered the Army and when he died. Fennell continues to reside in Texas. The insurance was in full force at Raymond's death intestate, he leaving no wife or children. Raymond's father is unknown, and he was never acknowledged by either parent in the formal manner described in the Civil Code of Louisiana to create him a natural child. Fennell also introduced a certified copy of a judgment which purports to show a determination by his court of probate in Texas that he is the sole surviving heir of Raymond and entitled to his insurance and to all his estate. The judgment is dated fifteen months before this suit was filed. The United States successfully contended that under the Louisiana law Fennell was not the heir of Raymond, and that Raymond's personal estate would escheat to the state of Louisiana and in consequence there is no liability for the insurance. Fennell contends that he has been adjudged to be the heir, that he is in fact the heir, both under Texas and Louisiana law, and is entitled to recover.

38 USCA § 514 provides that if no person within the permitted class be designated as beneficiary during the life or by the last will of the insured, the value of the insurance shall be paid to the estate of the insured; but "in cases when the estate of an insured would escheat under the laws of the place of his residence the insurance shall not be paid to the estate but shall escheat to the United States and be credited to the military and naval insurance appropriation." This provision of law is a term of the insurance contract, and is a defense against liability if it be shown that an escheat to the state of insured's residence would follow the payment. Brown v. United States (C. C. A.) 65 F.(2d) 65. The burden of proving this defense, here set up by the answer, is upon the United States. By "residence" is meant the permanent residence, the domicile of the insured, in this case Louisiana. The undisputed legal fact that under the law of Texas Fennell would be the heir of his illegitimate half-brother, Berry v. Powell, 101 Tex. 55, 104 S. W. 1044, 16 Ann. Cas. 986, is not determinative, for by the words of the quoted statute the law of Louisiana must govern.

We think the judgment of the Texas probate court can be given no effect as an adjudication binding on the United States. It is unaccompanied by the record on which it is based, and we can know only by inference what the nature and origin of the case was, what issues were tried, what parties were proceeded against, and how they were served. A judgment without the record on which it was pronounced may be offered to prove the mere fact that such a judgment was rendered or to show a power or title under it, as that one is a receiver or an administrator or has bought property under it. But when the judgment is set up as an estoppel or res adjudicata, the record on which it was rendered ought to accompany it to show the jurisdiction, the parties served, and the issues tried. Kerchner v. Frazier, 106 Ga. 437, 32 S. E. 351; Gibson v. Robinson, 90 Ga. 756, 16 S. E. 969, 35 Am. St. Rep. 250; 22 C. J. § 930; Wigmore on Evidence, § 2110. The recitals of this judgment show that named persons not including the United States appeared and that "all the unknown heirs of Louis Raymond, deceased, and all other persons claiming or pretending to be his heirs had been cited to appear according to law," and articles 3590 and 3595 of Rev. Stats. of Texas are pointed out to us as authority for the proceeding thus to determine heirship; the latter article declaring that the judgment shall be conclusive on such parties as appear and prima facie evidence against all others. But if notwithstanding the pending administration we assume that this was a proceeding under that statute regularly followed out and so one in rem, or quasi in rem to establish a status as heir, we yet think it ineffectual to bind the United States in this case. The Texas probate court had no jurisdiction to decide whether the United States owed a policy of insurance. The United States do not now claim to be heirs of Raymond, nor do they dispute Fennell's claim to be the sole heir to anything that the Texas court may have had before it for administration. This insurance, because suable in Texas under 38 USCA § 445, was no doubt an asset there on which to found jurisdiction to appoint an administrator, but it was not a res which had actually been seized by that court. Personal service on the debtor may give a court jurisdiction quasi in rem over a chose in action. Armour Fert. Works v. Sanders (C. C. A.) 63 F.(2d) 902. But without such service the mere appointment of an administrator or a receiver to collect it will not constitute such a seizure as to enable the court without hearing the debtor to conclude or even prejudice

him in respect of it. The citation indeed was not addressed to the United States but only to persons claiming to be heirs at law of Raymond. With citation thus restricted and the res in controversy in no effectual manner seized by the court, there is no possibility of the judgment affecting the liability to pay the insurance without denying due process of law. In Scott v. McNeal, 154 U. S. 34, 14 S. Ct. 1108, 38 L. Ed. 896, administration was granted and property sold of a person supposed to be dead who proved to be alive. The Supreme Court of the state held such proceedings to be in rem and conclusive against him, but the Supreme Court of the United States held them void. It was said, page 46 of 154 U. S., 14 S. Ct. 1108, 1112: "Even a judgment in proceedings strictly in rem binds only those who could have made themselves parties to the proceedings, and who had notice, either actually or by the thing condemned being first seized into the custody of the court." And at page 49 of 154 U. S., 14 S. Ct. 1108, 1114: "As the jurisdiction to issue letters of administration upon his estate rests upon the fact of his death, so the notice given before issuing such letters assumes that fact, and is addressed not to him, but to those who after his death may be interested in his estate, as next of kin, legatees, creditors, or otherwise. Notice to them cannot be notice to him, because all their interests are adverse to his. The whole thing, so far as he is concerned, is res inter alios acta." See, also, Thormann v. Frame, 176 U. S. 350, 20 S. Ct. 446, 44 L. Ed. 500, and cases cited. In Christianson v. King County, 239 U. S. 356, 36 S. Ct. 114, 60 L. Ed. 327, the subject-matter of the proceeding in the probate court was land within its jurisdiction, and the proceeding to escheat it cited all persons to appear. Finally, we suppose from the face of the judgment here offered, that the thing really decided by it was that according to the law of Texas Fennell was the brother and sole heir of Raymond and that nothing whatever was considered or adjudged concerning the law of Louisiana, for the judgment nowhere discloses that the deceased Raymond was at his death domiciled in Louisiana. It has no force against the United States, either prima facie or conclusive, as an adjudication.

Passing to the law of Louisiana, Fennell rests his claim to heirship on Civ. Code, art. 923: "If the father and mother of the natural child died before him, the estate of such natural child shall pass to his natural brothers and sisters, or to their descendants." By article 485, "The succession of persons who die without heirs, or which are not claimed by those having a right to them, belong to the State." Treating his unknown father as nonexistent, for half-blood relationship suffices under article 923, Fennell would have no difficulty if in Louisiana the term "natural brothers and sisters" meant as elsewhere kindred by nature but not by law, that is, illegitimates. His trouble arises from the definitions of article 202: "Illegitimate children who have been acknowledged by their father are called natural children; those who have not been acknowledged by their father * * * or whose father is unknown, are contradistinguished by the appellation of bastards." And article 203: "The acknowledgment of an illegitimate child shall be made by a declaration executed before a notary public, in presence of two witnesses, by the father and mother, or either of them, whenever it shall not have been made in the registering of the birth or baptism of such child." These sections on their face would seem to make natural children only those illegitimates who had been acknowledged formally according to article 203, all others being bastards who under article 920 cannot inherit from either father or mother, though nothing is said therein about their inheriting from each other. But articles 207, 208, 209, and 212 deal with a contest of claims set up by natural children, and the last-mentioned article declares: "Illegitimate children of every description may make proof of their maternal descent, provided the mother be not a married woman. But the child who will make such proof shall be bound to show that he is identically the same person as the child whom the mother brought forth." In the present case it is conceded that the mother was unmarried and that Fennell and Raymond are her identical children. The decisions upon these and the related articles by the Supreme Court of Louisiana have not always been consistent, especially when inheritance by or from the parent of the illegitimate child was the question. We think the weight of them is that while neither father nor mother can inherit from a child which he or she has not formally acknowledged according to article 203, that an illegitimate child at least as respects its right to inherit from its mother may have what is called a "forced acknowledgment"; that is, may prove the actual relationship under article 212 by any appropriate evidence. As respects inheritance between illegitimate brothers and sisters who trace their kinship through their mother the same proofs of their common maternal blood is permitted, they by such a "forced acknowledgment" proving themselves as respects her to be natural broth-

ers and sisters within article 923. Soon after the first Code containing these articles was adopted in 1825, in Lange v. Richoux, 6 La. 560, inheritance between two illegitimate sisters was the question, kinship being claimed through the mother. The court held that paternity might be disregarded, and that relationship by the half blood was sufficient. The court then established that by the prior Spanish law proof of birth from a woman was equivalent to acknowledgment by her, and that under the Code in regard to the mother illegitimate children of every description may make proof of their descent if she is not a married woman. In Jobert v. Pitot, 4 La. Ann. 305, it was held that formal acknowledgment according to article 203 was required only to establish one as the natural child of the father, but that illegitimate children may prove their natural maternal descent by any legal evidence. Cases were distinguished in which the illegitimates were children of a white man and a colored woman and incapable of acknowledgment. In Dupre v. Caruthers, 6 La. Ann. 156, there was involved both inheritance by an illegitimate child from its parent and inheritance between illegitimate children. A majority of the court held that the reasoning of Lange v. Richoux would not be extended to inheritance from the parent, but the whole court held that other proof than formal acknowledgment would suffice for inheritance between illegitimate brother and sister. As to parental inheritance the court seems to have vacillated, but we have been referred to no case in which illegitimate brothers and sisters borne by an unmarried woman have not been allowed to inherit from each other except those in which it was proven that the children had sprung from a union between white and colored persons which was unlawful and incapable of cure by acknowledgment. Even as to inheritance from the mother, the later cases have followed and reaffirmed Lange v. Richoux; Succession of Corsey, 171 La. Ann. 663, 131 So. 841; Murdock v. Potter, 155 La. 145, 99 So. 18; Taylor v. Allen, 151 La. 82, 91 So. 635; Perkins v. Brownell-Drews Lumber Co., 147 La. 337, 84 So. 894; Briggs v. McLaughlin, 134 La. 133, 63 So. 851. Our case of O'Quain v. United States (C. C. A.) 31 F.(2d) 756, is not in conflict with our holding here. There the mother of the illegitimate insured was in life, but for want of acknowledgment by her of her child she could not inherit, but being in life she stood in the way of natural brothers and sisters inheriting under article 923. Succession of Gravier, 125 La. 733, 51 So. 704, cited therein, was one of the cases where the illegitimates were fathered by a white man and mothered by a negro, and the decision went upon the point that the illegitimates could not inherit from each other because the parents were forbidden by law to marry and acknowledgment of the children could not avail to convert them from bastards into the natural children of either parent. That case recognized Lange v. Richoux as good law where no such obstacle stood in the way of a forced acknowledgment.

Appellee urges that in the present case the father of Raymond may have been a white man and their mother colored, so that the case would fall under the Gravier Case. If such be the fact, the burden is on the objector, the United States, to show it. Article 952. The present stipulation is that Raymond's father is unknown. It is also argued that Raymond was a bastard in Texas and that his personal status followed him to Louisiana. No doubt his status as illegitimate did follow him. Scott v. Key, 11 La. Ann. 232. But the distinction between natural, that is, acknowledged, children, and bastards observed by the Louisiana law is unknown to the law of Texas, and status in that respect was not defined in Texas and could not accompany him to Louisiana. The distinction must be drawn according to Louisiana law; but since formal acknowledgment is unknown in Texas where the children were born and reared, its absence ought the more readily to be excused in this case. Under the facts stipulated we think Fennell is the natural brother of Raymond and entitled to inherit from him under the Louisiana law.

The judgment is reversed, and the case remanded for further proceedings not inconsistent with this opinion.