## ELLIS et al. v. UNION COMPRESS & WAREHOUSE CO.

### No. 5523.

Court of Appeal of Louisiana. Second Circuit.

Jan. 3, 1938.

W. D. Cotton, of Rayville, for appellants.

Bernstein, Clark & Thompson, of Monroe, for appellee.

DREW, Judge.

This is a suit under the Workmen's Compensation Law of this State, Act 20 of 1914, as amended. The suit is by the parents of Charlie Ellis, deceased, for compensation for his death, caused by accident while in the employ of defendant compress company.

Plaintiffs allege total dependence for a livelihood upon their deceased son. Defendant, at the beginning of the trial below, made the following admissions:

"It is admitted by the defendant that Charlie Ellis, the deceased, was killed on or about the 28th day of September, 1934, in an accident while in the employ of the Union Compress and Warehouse Company at Delhi, Louisiana. That this accident arose out of and occurred in the course of the said Charlie Ellis' employment. That it is further admitted that Charlie Ellis was receiving a weekly salary of $9.60 per week.

"It is further admitted that Nelson Ellis and Nellie Rushing Ellis were not married at the time of the birth of Charlie Ellis, the deceased. It is further admitted that Nelson Ellis did marry Nellie Rushing on the 4th day of September, 1920, the ceremony being performed by W. H. Buchanan, Justice of the Peace, Franklin Parish, Louisiana, and that the license and the Justice's return thereon has been filed in Franklin Parish, Clerk's Office, and duly recorded in Marriage Record Book 'K' page 226, a certified copy of which is made a part of this admission (and filed in evidence). It is further admitted that amicable demand has been made herein and refused."

The record amply shows that plaintiffs were totally dependent upon the deceased for their support and livelihood. The only serious question raised in the case is the question of whether or not Charlie Ellis, a bastard, was acknowledged, as provided for by article 203 of the Revised Civil Code. The allegations of plaintiff's petition regarding the acknowledgment are as follows:

"That your petitioners were the parents of Charlie Ellis, deceased, who was born in Richland Parish, Louisiana, on or about the 3rd day of December, A. D., 1915.

"That at the time of the birth of the said Charlie Ellis, petitioners were not lawfully married, but they were living together as man and wife, and had been so living together for several years prior to the birth of the said Charlie Ellis. That petitioners were lawfully married on the 4th day of September, 1920, in Richland Parish, Louisiana.

"That when their said child, Charlie Ellis, was about fifteen years of age, petitioners took him to the Zion Methodist Church at Delhi, Louisiana, and with the Pastor of said Church officiating, and in the presence of witnesses, petitioners duly baptised and acknowledged said child as their own; that due record was made of said baptism and acknowledgment, and that it constituted the legitimation of the said child. Further aver that from the time of said child's birth, petitioners have acknowledged it as their own; have, during its infancy and childhood, cared for and nurtured it and given it such advantages as was possible for parents in their station of life.

"That the said child was duly legitimated by the act of marriage of your petitioners."

These allegations are all denied by defendant.

The provision of the Workmen's Compensation Law covering a child or children coming under the provisions thereof is as follows:

"The term 'child' or 'children' shall cover only legitimate children, step-children, posthumous children, adopted children and illegitimate children acknowledged under the provisions of Civil Code Article 203, 204 and 205. The term 'brother' and 'sister' shall include step-brothers and step-sisters, and brothers and sisters by adoption." Act No. 242 of 1928, § 8, subd. 2, par. 8 (H), p. 360.

It is further clear that illegitimate children, such as the deceased here, do not come within the purview of the Compensation Act unless they have been acknowledged by their parents, as provided for by article 203 of the Revised Civil Code. Articles 204 and 205 of the Revised Civil Code are not applicable to the facts of this case. Article 203 provides ways in which an illegitimate child may be acknowledged by its parents: First, by a declaration executed by the parents before a Notary Public in the presence of two witnesses; and, second, by an acknowledgment by the parents made in the registering of the birth or baptism of said child.

In this case, there is no contention that the acknowledgment was made by a declaration of the parents, executed before a Notary Public and two witnesses. The sole contention is that the acknowledgment was made by the parents in the registering of the baptism of the child, now deceased. A decision of this question will determine the case.

Plaintiffs lived together, as man and wife, for seven years before they were legally married, on September 4, 1920. The deceased child was born nearly five years before, and on the 4th day of December, 1915. On the fourth Sunday in August, 1924, the deceased was baptised in the Zion Methodist Church for Colored People in Delhi, La. The record of the church shows the following, and no more:

"Baptismal Roll, August 21, 1924, Robert Nash, Jr., Lillie Wilson, Willie Nash, James Nash, Herbert Nash, Charlie Ellis, Alberta Wilson."

This is recorded on page 208 of book containing the church record. It was not signed by anyone. On page 237 of the book, there appears the following, which is admitted to have been written entirely by T. A. Williams, the Secretary of the Church, on October 1, 1935, more than eleven years after the alleged baptismal service:

"Delhi, La., Oct. 1, 1935.

"This is to certify that Charles Ellis was received and baptized into Townsend Chapel A. M. E. Zion Church the fourth Sunday in August, 1924.

"Nelson Ellis, Father,
"Nellie Ellis, Mother,
"D. S. Williams, Pastor,
"T. A. Williams, Sec."

The parol testimony which we will now relate, was all admitted over the objection of the defendant. It shows that the only record kept by the church of baptisms was such as was kept in this case, as shown on page 208 of the record, and quoted above. That it is not customary for the minister, or anyone else, to subscribe their names thereto. It also shows that, at the time of the baptism of the deceased, his mother and father were present and presented him to the minister for baptism. The father testified as to the baptism as follows:

"Q. Nelson, who was present when Charlie Ellis was baptised? A. Members of the Church. Is that what you asked me? The congregation—the public.

"Q. Who was the pastor? A. S. D. S. Williams.

"Q. What, if anything, did Nellie say? A. Yes, sir, the preacher bound to say—Nelson Ellis' and Nellie Ellis' child.

"Q. The preacher said, 'Here is Nelson Ellis' and Nellie Ellis' child to be baptised'? And did he ask you and Nellie any questions then? A. I don't remember him asking any questions then—I remember he said, 'Here is the son of Nelson Ellis and Nellie Ellis. You willing for this child to be baptised?' 'Yes, sir.'

"Q. And you and Nellie both replied, 'Yes, sir'? A. Yes, sir."

The mother testified as follows:

"Q. Do you recall when Charlie was baptised? A. Yes, sir.

"Q. Was that in the Zion Methodist Church at Delhi? A. Yes, sir.

"Q. Are you a member of the Methodist Church, Nellie? A. Yes, sir.

"Q. Explain to The Court as best you can, how a child is baptised in your Church. A. 'I baptise Charlie Ellis in the name of

the Father and the Son and the Holy Ghost. Amen.'

"Q. That what the Preacher said? A. Yes, sir.

"Q. Now, before the preacher does that, what does he say or do? A. I told him, 'I present or bring my child to be baptised' and he asks me, 'whose child?' I said, 'Nelson Ellis is the father and Nellie Ellis the mother.'

"Q. Is that about the way all children are baptised in your church? A. Yes, sir."

The deceased child lived in the home with his parents from the date of birth until his death. This is all the evidence on the controverted question. Plaintiff contends it is a sufficient compliance with article 203 of Revised Civil Code, and that the deceased was duly acknowledged. Defendant contends to the contrary. The lower court, in a written opinion, held with the defendant and rejected demands of plaintiff, and plaintiff is now prosecuting this appeal.

The preponderance of the jurisprudence of the state is in accord on the subject of the necessary proof required of an illegitimate child to prove acknowledgment by his parents. The earlier decisions were almost uniform in holding that an illegitimate child could prove acknowledgment by his parents in other ways than those provided by article 203 of the Revised Civil Code, namely, by showing that the parents recognized him as their child, held him out to the world as such, and cared for him; however, in Succession of Lacosst, 142 La. 673, 77 So. 497, 500, and Minor v. Young, 149 La. 583, 89 So. 757, and Perkins v. Brownell-Drews Lumber Company, 147 La. 337, 338, 84 So. 894, our Supreme Court held that acknowledgment could not be made any other way than that provided by article 203, and in said decisions reviewed the former jurisprudence of the state.

In the Perkins and Lacosst Cases cited, the parents were claiming the right to inherit from their illegitimate child who had not been acknowledged, as provided by article 203, Revised Civil Code; and in the Minor v. Young Case, the illegitimate child was claiming the right of inheritance from his parents. In that case, the court first held that a strict compliance with article 203, Revised Civil Code, was necessary for the child to establish the fact of acknowledgment. A rehearing was granted, and pending the rehearing, the case was compromised. We do not know what the court would

have held on rehearing. We do not consider that case as authority for its original holding, under the circumstances.

Practically all of the decisions, prior to the Minor v. Young Case, held to the contrary view, and all we have read which have been rendered since, hold that an illegitimate child may prove acknowledgment in other ways than those provided by article 203 of the Revised Civil Code. Some of the decisions, both prior to and subsequent to the Minor v. Young Case, are: Lange v. Richoux, 6 La. 560, 570; Jobert v. Pitot, 4 La.Ann. 305; Succession of Fortier, 51 La. Ann. 1562, 1584, 26 So. 554; Succession of Hebert, 33 La.Ann. 1099, 1103; Bourriaque v. Charles, 107 La. 217, 31 So. 757; Briggs v. McLaughlin, 134 La. 133, 63 So. 851; Taylor v. Allen, 151 La. 82, 91 So. 635; Succession of Corsey, 171 La. 663, 131 So. 841; Succession of Jones, 185 La. 377, 169 So. 440; Ford v. Calhoun, 6 La. App. 350; Murdock v. Potter, 155 La. 145, 99 So. 18; Succession of Serres, 136 La. 531, 67 So. 356; Duvigneaud v. Loquet, 131 La. 568, 59 So. 992; Succession of Vance, 110 La. 760, 34 So. 767.

We therefore conclude that it is now well settled in our jurisprudence that an illegitimate child claiming the right to inherit from its parent or parents may prove that he was acknowledged by the parent or parents in other ways than those provided for in article 203 of the Revised Civil Code. The jurisprudence of this state seems to be as well settled that the parents, who claim the right to inherit from their illegitimate child, must prove that they have acknowledged the illegitimate child in one of the manners provided for in article 203, Revised Civil Code, and proof of any other manner of acknowledgment will not suffice. Fennell v. United States, 5 Cir., 67 F.2d 768; Succession of Lacosst, cited supra; Perkins v. Brownell-Drews Lumber Co. Ltd., cited supra; Barranco v. Davis, 175 La. 35, 142 So. 844.

The only case we have found holding to the contrary is the case of succession of Falls, 2 La.App. 759, decided by the First Circuit Court of Appeal, by a divided court. Judge Leche, in his dissenting opinion in that case, gives sound reasons for the distinction made. They are as follows:

"In this case as in the Lacosst Case, 142 La. 673, 77 So. 497, it is the mother who is claiming the inheritance and I am not aware of any law authorizing the mother to

inherit from her illegitimate child unless she had, during such child's lifetime, acknowledged the same in the formal manner provided by Article 203 of the Civil Code. It is true that under Article 193 et seq., C. C., providing for proof of filiation, other modes of acknowledgment are permitted, but such acknowledgment is for the benefit of the child as against its parents, and not for the purpose of benefiting the parent. The child is helpless to force a formal acknowledgment in its behalf by its parents.

"The parents are in an entirely different position and it is solely in their power, and within the free exercise of their volition and discretion, to legitimate their illegitimate offspring. It would be unjust to penalize the child for a wrong committed by its parents, and of which it is only the innocent victim. Hence the purpose of the lawmaker in enacting the provisions in the Civil Code permitting other than formal proof to establish filiation, and in limiting this mode of acknowledgment for the benefit of the child."

The majority opinion in this case is clearly in conflict with the decisions of the Supreme Court cited above.

■ In the case at bar, the parents are claiming the right to inherit from their deceased illegitimate son, and the sole question for determination now is: Was the acknowledgment made by them as set forth in full in the first part of this opinion, a strict compliance or sufficient compliance with provisions of article 203 of the Revised Civil Code?

We are of the opinion that it was not, under the authority of the case of Perkins v. Brownell-Drews Lumber Company, Ltd., cited supra, wherein the court said:

"Article 203, C.C., provides:

"'The acknowledgment of an illegitimate child shall be made by a declaration executed before a notary public, in presence of two witnesses, by the father and mother, or either of them, whenever it shall not have been made in the registering of the birth or baptism of such child.'

"Defendant contends that the modes of acknowledgment here specified are exclusive; and plaintiff contends that they are not, but that a baptism of the child in the presence of the parents as their child, and a declaration by the parents to the federal census taker of their parentage of the child, is the equivalent of a 'registering of the birth or baptism' of the child. For so hold-

ing this court would have, not to interpret, but to amend, the said article by recognizing an additional mode of acknowledgment.

"It is not contended that the decisions in the cases of Lange v. Richoux, 6 La. 560, Succession of Fortier, 51 La.Ann. [1562], 1585, 26 So. 554, Bourriaque v. Charles, 107 La. 217, 31 So. 757, Succession of Vance, 110 La. 760, 34 So. 767, Briggs v. McLaughlin, 134 La. 133, 63 So. 851, and Jobert v. Pitot, 4 La.Ann. 305, recognizing the right of a child to prove acknowledgment otherwise than by the modes prescribed by said article 203 have any application to the case. The controlling decision is Succession of Lacosst, 142 La. [673], 674, 77 So. 497, to the effect that a parent has not this right."

In Pigeau v. Duvernay, 4 Mart., O.S., 265, the court in passing on a similar question said:

"The statement of facts refers us to the registry of baptism of the deceased, in which the plaintiff is mentioned as her natural father, and to a record of the Court of Probates, which shows that the plaintiff was, on the application of the deceased, appointed her curator, ad bono, as her natural father.

"From these facts, the paternity of the plaintiff is sufficiently proven. But the estate in dispute must be disposed of according to the provisions of the Civil Code, by which 'the estate of a natural child, dead without posterity, belongs to the father who has acknowledged him.' (156, art. 48). Hence, proof of paternity does not suffice; the acknowledgment must have been proved.

"The acknowledgment is required to be formal. The manner of making it is pointed out by law.

"This formal or legal acknowledgment differs from the incontrovertible evidence of natural paternity resulting from the res judicata. The latter gives right to alimony; the former to that, and, in some cases, to the inheritance of the parent—in others, to legitimation. The latter may be obtained, as to the mother, by the illegitimate children of every description (Civil Code, 50, art. 34), even by those born from an incestuous or adulterous connection, who are incapable of legal acknowledgment. (Ibid., 48, art. 26.)

"As the evidence, on which courts of justice are authorized to pronounce the natural parentage (Ibid., 50, art. 31), is weak-

-er than that which results from a formal acknowledgment, and is not always morally conclusive; the legal consequences of adjudged and acknowledged parentage are thus different.

"From the baptismal registry, the plaintiff can derive no proof: it could not make any against him. He did not subscribe it. It does not appear to have been done with his consent or knowledge. It is, as to him, res *inter alios acta*. It cannot vest or destroy any right in him.

"The evidence resulting from the letters of curatorship granted to him by the Court of Probates, at the child's instance, and accepted by him, establishes the parentage, and upon it he might, perhaps, have been compelled to furnish her alimony, in the same manner as if the parentage was established by the decree of a court, in a suit to which he was a party. But this evidence would not have entitled the child to legitimation in case her parents could have, and had been, married after her birth, without a formal acknowledgment, either before, or by the contract of marriage itself. (Civil Code, 48, art. 21).

"As the case does not offer any fact, from which an acknowledgment could have been inferred, prior to the passage of the Civil Code, we have not examined whether the law was different before; neither have we inquired whether the plaintiff, being a white man, and the mother of the deceased a woman of color, their issue could be the object of a legal acknowledgment. This became useless, since we are of opinion that there has been no such acknowledgment."

In Succession of Lacosst, cited supra, the court said:

"Article 203 of the Civil Code does not declare that the mere fact that the father or mother of an illegitimate child has had the child baptized, or had the birth recorded, shall be such an acknowledgment as to change the legal status of the illegitimate child from that of a bastard to that of a natural child, and entitles the parent so acknowledging the child to inherit his estate if he dies without posterity. What the law requires for the acknowledgment of an illegitimate child, to have the legal effect, of making him a natural child, within the meaning of article 922 of the Code, is that the acknowledgment shall be made either in the registering of the birth or baptism of the child, or by a declaration executed before a notary public in the presence of two witnesses.

"It is conceded in this case that the mother did not acknowledge her illegitimate child by a declaration before a notary public and two witnesses. It is not contended that she made a formal acknowledgment in the registering of the birth or baptism of the child. In fact, there is no evidence that there was a registering of the baptism. The only evidence on that subject is the testimony of the mother that she had the child baptized in her name; that is, as Eugene Charles Lepine. To hold that the mere fact that the mother of an illegitimate child had the child baptized as her own or in her name is equivalent to a formal acknowledgment in the registering of the baptism would be to ignore the provisions of article 203 of the Code on that subject. * * *

"To hold that proof of maternal descent, offered on behalf of the mother, or her heir at law, as in this case, should take the place or supply the want of a legal acknowledgment on the part of the mother, and permit her, or her heir at law, to inherit the estate of her illegitimate child, would transpose the language of article 922 of the Code so as to provide that the estate of an *unacknowledged* illegitimate child (who has died without posterity) shall belong to the mother, on proof merely that the deceased was 'identically the same person as the child whom the mother brought forth.' Either that would be the consequence, or it would follow that any informal recognition by the mother of an illegitimate child as her own would be a legal acknowledgment, and would convert the bastard into a natural child, within the meaning of article 922, notwithstanding article 203 says that the acknowledgment of an illegitimate child, to have legal effect, shall be made by a declaration executed before a notary public and two witnesses, if it was not made in the registering of the birth or baptism of the child. We cannot maintain the doctrine on which the plaintiff relies without ignoring the requirements of article 203 of the Code, for legal acknowledgment by the mother of an illegitimate child, as if those provisions had been omitted from the Code."

In the case of Wells v. White-Grandin Lumber Company, Inc., 13 La.App. 696, 129 So. 171, 173, decided by the Court of Appeal, First Circuit, which was a suit for compensation for death of child, the court said:

"Clearly, the plaintiff has failed to prove, on this point, any such acknowledgment as

is contemplated under the article of the Civil Code, nor are we any more convinced that she has done so on the other ground urged by her, that the father had acknowledged the child by having it christened in the Baptist Church at Slagle, La., and having had a godfather and a godmother appointed for it.

"Aside from the serious doubt raised by the testimony that the father was present at the alleged ceremony called a chistening, or that he was the one who had had the child christened, and aside also of the uncertainty of the form of ceremonial which was performed being a 'baptism' in the meaning of that term under the ritual of the Baptist faith, the plaintiff is confronted with the fact that, regardless of what the ceremony was that took place on the occasion stated, there was no registering of any baptism or registering of any acknowledgment or declaration made by the alleged father in the ceremony. Article 203 of the Civil Code, in requiring, in the absence of an acknowledgment by a declaration in authentic form, acknowledgment by a declaration made in the registering of the baptism of the child, certainly contemplated something more than the mere oral testimony concerning the baptism which we have before us in this case. At its best, oral testimony could not supply the proof necessary to substitute the declaration which has to be made before the notary and two witnesses. What the law means by a declaration in the registering of the baptism of the child is some kind of record bearing some semblance at least of official approval or authority on the part of those empowered to perform the ceremony. Such record does not exist in this case, or if it does or did, was not, and apparently cannot, be produced.

"If it be conceded that plaintiff's petition sets out a cause of action, we are satisfied the proof fails to show an acknowledgment of the child by the father in the manner required by law, and therefore the claim has to be rejected."

Also, see Succession of Westheimer, 172 So. 30, decided by the Court of Appeal, First Circuit, to the same effect. In Stewart v. Parish of Jefferson Davis, 17 La.App. 626, 136 So. 659, the above rule was adhered to, and the court held that proof of paternity and maternity, and the filing of a certificate of baptism, which reads as follows:

"On this, the 17 day of Jan. 1913, I the undersigned Catholic Priest, have baptized John, born on the 21 day of Nov. 1912. Child of Edmond Stewart and Marie Thibodaux. Sponsors Jaques Montousser and Armena Dugas. [Signed]   A. F. Isenberg, Rector," was not a compliance with the requirements of Revised Civil Code, art. 203.   The court said:

"The certificates offered as evidence of acknowledgment in this case contain only the recitals of the two priests who made them, the one especially pertinent being that signed by Reverend A. F. Isenberg, who attests over his signature, as appears on its face, that on January 17, 1913, he baptized a certain child, whose name, as given to him, was John, that he was the child of a certain named man and woman, and that two other persons named therein acted as sponsors. It is not pretended that the certificate bears any other signature than that of the officiating priest, and the source from which he derived his information for making it is not given. There is nothing in it which even remotely may be construed as a declaration by the father or mother of this child which the article of the Code requires in order to constitute an acknowledgment."

We therefore conclude that the judgment of the lower court, rejecting the demands of plaintiff for lack of proof of acknowledgment of their deceased illegitimate son, is correct, and it is affirmed with costs.