## B. Price, Guardian, v. John Ray, Executor.

It is no objection to a slave's right to manumission by act *inter vivos* or *mortis causa*, that she was the concubine of her owner at the time the act was passed.

An acknowledgment by the father of natural children by his own slave, has no legal or binding effect.

Where a will was made prior to the passage of the Act of 1857, prohibiting the emancipation of slaves, in which a slave was manumitted by his master—*Held :* That under the will the slave acquired only an *inchoate right* to his freedom, to be perfected in accordance with the existing laws and regulations upon the subject ; and that when the slave, who had acquired this right under the will, did not perfect it under the existing laws, he cannot be a party to the suit, nor have his rights under the will enquired into, since the passage of the Act of 1857.

APPEAL from the District Court of the Parish of Ouachita, *Richardson, J.* *Morrison & Purvis*, for plaintiff. *J. T. Ludeling* and *John McEnery*, for defendant and appellant.

Voorhies, J. *Simeon S. Hyde*, deceased, left two wills, directing the manumission of his slave *Minnie* and of her eight children, making them his universal legatees.

The plaintiffs, as heirs-at-law of the deceased, claim at the hands of the executor, the delivery of the estate, notwithstanding the provisions of the will, which they allege to be null and void, on the ground that the legatees cannot be manumitted under our laws, and on the further ground, that the testator lived in concubinage with the slave *Minnie*.

The defendants set up the plea of three and five years' prescription to the plaintiff's demand.

It is no objection to the slave's right to manumission by act *inter vivos* or *mortis causa*, that she was the concubine of her owner. "The law has declared what causes shall be sufficient to render the enfranchisement of a slave null and void, and this is not one of them." *Célésie* v. *Himel*, 10 An. 188 ; C. C. 184 et seq.

With regard to the children of the woman *Minnie*, the petition does not allege that they were the natural children of the deceased ; and the only thing we find in the record, on that subject, is, that the deceased had stated, in conversation, that such was the case, a declaration then of no legal or binding effect. *Turner* v. *Smith et als.*, 12 An. 417.

There is no allegation that the wills under consideration, are in violation of the provisions of the Civil Code, establishing the disposable *quantum* which a natural father may give to his natural child, and the conditions attached thereto. C. C. 1496. This question, although adverted to in the brief, is not legitimately raised by the pleadings.

At the time of the death of *Simeon L. Hyde*, it was lawful for him to manumit his slaves by last will and testament ; but the rights acquired by them were inchoate, subject or conditioned to be perfected according to the existing regulations and laws upon this subject-matter. In the meantime the *status* of these parties was that of slavery ; and their inchoate right of freedom was subject to be defeated by subsequent legislation, rendering impossible its consummation. Such is the effect of the legislation of the year 1857, by which it is provided, "that from and after the passage of this Act, no slave shall be emancipated in this State." See Acts of 1857, p. 55.

88

Price
v.
Ray.

Unless this law be repealed, and provision made by which the last wills and testaments of *Simeon L. Hyde*, deceased, might be carried into effect, it is evident that the slaves he directed should be manumitted, cannot stand in court for any purpose. They could not, before the Act of 1857, be heard, except with reference to their freedom and emancipation; and now this very privilege is withdrawn from them by legal enactment. *Henriette, alias Mary*, v. *Heirs of Charles Barnes*, 11 An. 453; *Maranthe, Genie et als.* v. *C. G. Hunter et als.*, 11 An. 734; *Jamison* v. *Bridge et al.*, ante 31.

It does not follow, however, that these slaves forfeit absolutely. the inchoate right, acquired by them under the will; for if the law should happen to be changed, their remedy might be revived. At the time the will took effect, the right of owners to emancipate their slaves was recognized. The slaves of the deceased have not acquired a vested right to become free at a future period; nevertheless, they have acquired an inchoate right, which may yet be perfected, should a change of legislation permit. *Delphine* v. *Guillet*, 13 An. 248.

But, in the meantime, their *status* is neither that of freemen, nor that of *statu liberi*; it is inevitably that of slavery. *Pelagie Brown, f. w. c.*, v. *Ursin Raby*, ante 41; *Pauline, f. w. c.*, v. *Hubert et al.*, ante 161.

The prescription of five years, applicable to the action in nullity of a will, cannot avail in this instance, as the record does not show that five years have elapsed before the institution of this suit, since the probate of the wills of the deceased. *Calais* v. *Semére*, 8 An. 462.

Besides, the question involved is one of State policy; and the mere lapse of five years since the probate of the will, could not have the effect to defeat the intervening provisions of the Act of 1857, forbidding all manumissions in this State. *Heirs of Provost* v. *Wm. Provost*, 13 An. 574.

Judgment affirmed.