No. 1639.—St. Felix Casanave, Administrator, v. Adam L. Bingaman.

A white man is allowed, by the laws of Louisiana, to acknowledge his natural children by a woman of color. Such acknowledgment must, however, be made before a notary public in the presence of two witnesses. None but authentic evidence of the acknowledgment is admissible to establish the fact. C. C. 221, 222, 226 ; 12 R. 57.

APPEAL from the Second District Court of New Orleans. *Thomas, J. G. Schmidt,* for plaintiff and appellant. *W. H. Hunt,* for defendant and appellee.

Taliaferro, J. The plaintiff, as administrator of the succession of James Adam Williams, sues to get possession of the property of the estate which he alleges is illegally withheld from him by the defendant. The answer is that the defendant is the natural father of the decedent and his sole heir, and as such has been duly recognized and put in possession of the succession.

The facts appear to be that James Adam Williams, or, as otherwise named James Adam Bingaman, was one of three natural children who survived their mother, Mary Ellen Williams, a free woman of color who died in Admas county, Mississippi, in November 1861. She bequeathed a considerable amount of property to her heirs, then minors, viz : Charlotte Pauline (wife of the plaintiff in this case), James

Adam and Elenora. In January, 1862, A. L. Bingaman, the defendant, was appointed their tutor. James Adam, the son, perished on board the Fashion, in the destruction of that steamer, on the twenty-seventh of December, 1866. He left no will and no heirs in the descending line. His succession was appraised to $25,196 12.

The plaintiff, on the twelfth of July, 1867, applied for letters of administration, and after the usual proceedings were had, was duly appointed administrator of the estate.

On the ninth of July of the same year, three days before the filing of the plaintiff's petition, the defendant filed his petition in the same court, setting out his claim to the succession of his natural son, as his sole heir, and prayed to be decreed entitled to the same; that he be allowed to accept it with benefit of inventory, and that an inventory and appraisement be made. It was shown satisfactorily to the court that the defendant had by notarial act, on the thirteenth of July, 1865, formally acknowledged the decedent as his natural son; that the son died without descendants, and that there were no debts against his estate. Therefore, on the twelfth of July, 1867, an order was rendered recognizing the defendant as sole heir of the estate, and that he be put in possession as such.

In this suit the plaintiff alleges as grounds for annulling this order of the court, that the mother of the decedent died in 1861, and that the acknowledgment of paternity made by Adam L. Bingaman was " evidently made in the exclusive interest of himself, and was therefore inadmissible without additional proofs legally taken to prove the filiation. That A. L. Bingaman was not the natural father of the decedent, and that he expects to prove that he repeatedly denied being his father. That the decedent was a free man of color, the son of Mary Ellen Williams, a free woman of color, and the said A. L. Bingaman, being a free white man, labors under a twofold disability in the matter of the acknowledgment of paternity, because the laws of Louisiana forbid a white man from legitimating his colored children, and because A. L. Bingaman was incompetent to marry Mary E. Williams, the mother, at the time of the conception of the son, and hence could not acknowledge him as his natural child." The defendant excepted on two grounds; first, that the petition sets forth no cause of action; secondly, that the petitioner, Casanave, is without authority to stand in judgment herein as administrator of the succession of J. A. Williams, is identically the same person as J. A. Bingaman, and that the name of Bingaman was the patronymic by which that person was generally known, and to which he was entitled after the act of recognition in 1865. That the succession of J. A. Bingaman was not opened by the proceedings in virtue of which the plaintiff asserts the character of administrator of the estate of J. A. Williams, and could not be opened, because the same had been theretofore regularly opened and finally closed by the

judgment of the court rendered on the application of the defendant to be put in possession of said succession in the proceedings referred to in plaintiff's petition.

Judgment was rendered in favor of defendant, sustaining the exceptions and dismissing the plaintiff's action. The judgment further ordered that the under tutor of the minor, Elenora Williams, institute, either conjointly with the plaintiff and wife or in her own behalf separately, in the name of said minor, an action testing the validity of the order of the court decreeing A. L. Bingaman to be the sole heir of J. A. Bingaman, otherwise called J. A. Williams.

From this judgment the plaintiff has appealed.

The grounds upon which the plaintiff chiefly relies are : First, that the defendant was not the father of J. A. Williams ; second, defendant could not legally acknowledge him.

That James Adam Williams, as he was sometimes called, is the same person that was also called James Adam Bingaman there can be no doubt whatever. The identity is fully shown. The plaintiff's pleadings distinctly admit it. We do not see that lone declarations of defendant denying himself to be the father of the decedent, if such declarations had been proved, could have weight against his formal acknowledgment of paternity before a notary public and witnesses in manner required by law, and his sworn averments in judicial proceedings. That A. L. Bingaman was under any disability to make the acknowledgment of his natural child we do not see.

The question whether a white man can by the laws of Louisiana legally acknowledge his children by a woman of color underwent a very full examination in the case of Compton and others v. Prescott and another, executors, and others reported in 12 Robertson, page 57.

The court in that case said : " Our code, after having in article two hundred divided illegitimate children into two classes, to wit, those born from two persons who, at the moment when such children were conceived, might have legally contracted marriage with each other ; and those who are born from persons to whose marriage there existed some legal impediment, proceeds in the two subsequent articles to define who are meant by adulterous and incestuous bastards. Civil Code, articles 201 and 202. The latter can never be acknowledged (ibidem, article 222), and although there is a legal impediment to the marriage of a white person with a free person of color (article 95), the exception does not appear to extend to their illegitimate or natural children, for article 222 says only, " that such acknowledgment shall not be made in favor of the children produced by an incestuous or adulterous connexion." Now, article 221 says in positive terms, that the acknowledgment of an illegitimate child shall be made by a declaration before a notary public in presence of two witnesses, and provides that *no other acknowledgment shall be made in favor of children of color.* This last proviso contains a negative, pregnant with an affirmative, and un-

doubtedly means, as we said in the case of Robinett *et al. v.* Verdini's vendees (14 La. 545), that any other proof of acknowledgment should be excluded when offered by children of color.  It can not mean anything else, for article 226, by which illegitimate children who have not been legally acknowledged, are allowed to prove their paternal descent provided they be free and white; provided, also, that *free illegitimate children of color may also be allowed to prove their descent from a father of color only;* and it is obvious that the last restriction was inserted into the law, because with regard to his white father an illegitimate child of color is not allowed to prove that he has been acknowledged, but in the manner pointed out in article 221, to wit, by authentic evidence; and that, therefore, he can not resort to any other kind of proof but when his father is a man of color."

This is the settled jurisprudence of the State, and we are of the opinion that the defendant was not under any disability to acknowledge in the mode by public act before a notary and witnesses, the decedent as his natural son.  We do not find that injustice has been done towards the two sisters of the deceased, J. A. Williams or J. A. Bingaman, for the judgment expressly reserves their right to institute proceedings to establish and recover any share or interest they may by law be entitled to in the succession of their brother.

It is therefore ordered, adjudged and decreed that the judgment of the District Court be affirmed, with costs in both courts.

Rehearing refused.