LAND, J.
Virginia R. Davis, born a slave in Nashville, Tenn., died at her domicile in the city of New Orleans on July 30, 1908, leaving a last will in olographic form, in which she instituted Frank Walker as universal legatee and appointed him as her executor. The will was probated, and the court ordered the universal legatee to be sent into possession of the property of the estate, consisting of 20 lots of ground, household furniture, and several hundred dollars in money. Among the papers of the decedent was found the note of Frank Walker in favor of the decedent for $3,500, secured by shares of stock of the Walker Improvement Company. On the trial of his application to be recognized as universal legatee, Frank Walker testified that said note was without consideration, and was intended as a donation to Mrs. Davis in consideration of aid and services rendered to him when he lost an arm, and was sick and penniless for a long time.
One Mrs. Barrett filed a petition, claiming that she was the universal legatee of the decedent under another will, and, in the alternative, that she was a creditor of the estate in the sum of $50,000, as shown by a certain deed of trust. Mrs. Barrett failed to produce the documents referred to in her petition, and her suit was dismissed.
The present suit was filed in January, 1909, by George Gamble, colored, of the city of Nashville, Tenn.
From the allegations of the petition it appears that George Gamble, colored, is the natural son of the deceased, and was bom in or about the year 1863, in the said city of Nashville; that Virginia Riddleberger Davis, colored, formerly known as Virginia, alias Dink Coleman, died at her domicile in the city of New Orleans on July 30, 1908; that said decedent never had any legitimate children, and no other natural or illegitimate child than the petitioner, except a girl child who died in infancy; that, after the birth of the petitioner, the said decedent changed her domicile to the city of New Orleans, and left petitioner to reside in or near the city of Nashville, the said decedent having there secured for petitioner a home during his infancy.
The petitioner alleged the absolute nullity of the will on the ground that it was not wholly written, dated, and signed by Virginia R. D-avis, and, in the alternative, that the disposition of said will is illegal, null, and void because the testatrix and the universal legatee at the time of the death of the decedent and of the execution of the will, and for 20 or more years prior thereto, were living and had lived together in open eoneu-, binage.
Frank Walker answered, pleading a general and special denial of the alleged heirship of the petitioner, the alleged concubinage, and the alleged invalidity of the will. More than a month later the defendant filed an exception of no cause of action, which was by the court referred to the merits.
The case was tried and judgment was rendered in favor of George Gamble, recognizing him as the natural or acknowledged ille *181 :gitimate son of tlie decedent, and as such entitled to inherit her estate, annulling the dispositions of the will of the decedent in so far as the same constituted Prank Walker universal legatee and restricting the bequest in his favor to one-tenth of the estate, payable out of the movables.
Defendant filed a motion for a new trial, ■supported by affidavits of the nonexistence of the alleged concubinage. The motion was ■overruled, and the defendant has appealed. Plaintiff has joined in the appeal, and prayed that the judgment be amended by decreeing ■.the nullity of the will for want of form.
The questions for review are:
(1) Whether George Gamble is the illegitimate son of Virginia It. Davis.
(2) If so, whether George Gamble is the ■duly acknowledged natural son of Virginia It. Davis.
(3) Whether the will is valid in form.
(4) Whether Virginia It. Davis and Prank Walker lived together in open concubinage as alleged in the petition.
The record consists of an immense mass of conflicting testimony, much of which was taken in Tennessee under commission.
The following facts were found by the trial judge:
That the decedent was born in Nashville, Tenn., of a slave mother and a white father about the year 1842. That on April 22, 1884, she was sold as a slave to one K. for $800. That before and after the sale she was the prostitute of K. That in the latter part of 1864 or early in 1865 she became the mistress of one Gamble, and while his concubine gave birth to a boy child in the latter part of 1865 or early in 1866. That Gamble sent the deceased money to pay the midwife. That deceased named the boy George Gamble, and acknowledged him to her friends and acquaintances as her child. That the boy lived with his mother until he was three years old. That in 1868 or 1869 ■the deceased left the boy with an old colored woman named Lucy Cotton, and went to Memphis, Tenn., where in 1874 she became acquainted with Prank Walker. That the deceased was living with W., a bachelor, as housekeeper, and Walker lived in the same house until 1879. That in 1879 Walker left Memphis, and was an engineer on a steamboat until 1881, when he came to New Orleans. That Walker had some correspondence with the deceased, which led to her settling in New Orleans in the year 1882. That after her arrival the deceased rented houses at various times, and kept roomers and boarders. That Walker was her first roomer, and continued to room in the several houses occupied by the deceased until her death. That to one neighbor the deceased stated that Walker was her husband, to others that he was her man. That in 1883 Walker made a will in favor of the deceased, but destroyed the same, when she said, “How long will it take the lawyers to beat me out of the money?” That in 1904 Walker gave the deceased a note for $3,500 without any consideration. That the will of the deceased was found in Walker’s room. That Walker was frequently absent on business, but always retained his room and his telephone in the house of the deceased. That, when away, Walker corresponded with the deceased. That, when she died, he attended her funeral from a negro church, and was her chief mourner, and the only white man present.
Prom all the facts and circumstances of the case the judge concluded that Walker and the deceased had lived in open concubinage.
The preponderance of the evidence sustains the findings that the petitioner was the son of Virginia It. Davis, a slave, by one Gamble, a white man, and that prior to her departure from Nashville in 1868 or 1869 the deceased treated the petitioner as her son. But it appears from petitioner’s own testimony that his mother abandoned him in *183 1S68, and that ever afterwards there was no communication whatever between them.
The next question is as to the legal sufficiency of the alleged acknowledgment.
In the very interesting case of Lange et al. v. Richoux et al., 6 La. BOO, the genesis of our laws on the subject of inheritance by natural children is clearly set forth. The court said:
“The eleventh law of Toro required that, to be regarded as natural children, there should have existed at the birth or conception, no legal impediment to the marriage of the parents, and that they should be acknowledged by the father,' dispensing, however, with any formal acknowledgment when the mother lived in the same house with the reputed father and was his sole concubine. Under this law, it was considered by the ablest commentators that proof of birth was equivalent to acknowledgment on the part of the mother and proof of cohabitation with the mother as sole concubine tantamount to an acknowledgment of paternity.”
In that ease the court held that the capacity of heirs to inherit depends on the law in force at the time the succession is opened, and that, under the Civil Code of 1825, proof of maternity may be made by any kind of legal evidence tending to show status, and that this forced acknowledgment has the same effect as the voluntary one in an authentic act or in the registry of birth or baptism. As article 914 of the Civil Code of 1825 provided that bastard, adulterous, or incestuous children shall not enjoy the right of inheriting the estate of their natural father or mother, the law allowing them nothing more than alimony, it follows that the rule announced in Lange v. Richoux must be restricted to natural children capable of inheriting when acknowledged or held to he acknowledged by their parents. The doctrine that natural children may prove their maternal descent by any legal evidence was again affirmed in Jobert v. Pitot, 4 La. Ann. 305.
Article 221 of the Civil Code of 1825 provided that no other proof of acknowledgment than that by notarial act or registry of birth or baptism should be admitted in favor of children of color; and by St. March 24, 1831, p. 80, a white person was prohibited from legitimating a colored child. The same statute defined “natural children” as the issue of parents who “might at the time of conception have contracted marriage.” Article 95 of the Civil Code of 1825 prohibited marriage between free persons and slaves, and between free white persons and free people of color.
The Civil Code of 1870 abolished all distinctions between persons on account of race, color, or previous condition of servitude.
Article 221 of the Civil Code of 1825 was revised so as to read:
“Art. 203. The acknowledgment of an illegitimate child shall be made by declaration executed before a notary public, in presence of two witnesses, by the father and mother or either of them, whenever it shall not have been made in the registering of the birth or baptism of such child.”
Article 222 of. the Code of 1S25, prohibiting the acknowledgment of children produced from an adulterous or incestuous connection, was broadened so as to read:
“Art. 204. Such acknowledgment shall not be made in favor of children whose parents were incapable of contracting marriage at the time of the conception.”
Hence, under the plain letter of the Civil Code of 1870, there is only one class of illegitimate children that can be acknowledged, namely, the issue of persons capable of contracting marriage at the time of conception. Such children are properly called “natural,” ,a species of the class, “illegitimate,” and the only kind that can be legitimated. Civ. Code, arts. 198-200. Such children are styled in France “naturels simples.” 1 Mourlon, p. 480. The same commentator makes it very clear that natural filiation may be proved in the same manner as legitimate filiation. Id. p. 483 et seq.
But Virginia Coleman was a slave, and her son was born a slave. The mother had no capacity to contract marriage with a white *185 man or a free person of color under either the laws of Tennessee or of Louisiana. The intermarriage of slaves, even with the consent of the master, produced no civil effects. Civ. Code 1825, art. 182. Hence the petitioner was conceived and born a bastard, and had no status as a natural child. Has this incapacity been cured by the emancipation of the mother and child, and by their investiture with all the civil rights enjoyed by white people?
By Act No. 210, p. 278, of 1868, the Legislature provided a mode of legalizing private or religious marriages, and marriages of all persons of whatever race or color, and of legitimating the children of such marriages, by declarations of the parties before a notary public. The life of this statute was, however, limited to two years.
By Act No. 68 of 1870, it was enacted:
“That natural fathers and mothers shall have power to legitimate their natural children, by acts declaratory of their intentions, made before a notary public and two witnesses: Provided, that there existed at the time of the conception of such children no other legal impediments to the intermarriage of their natural father and mother except those resulting from color or the institution of slavery.”
In Succession of Hébert, 33 La. Ann. 1107, Emilia Hebert sued to be recognized as the acknowledged natural daughter and sole issue of Melasie Hébert, who died in 1879. The collateral heirs opposed on the ground that Emilia was a colored person, the illegitimate and unlawful fruit of the connection of the deceased, a white woman, with a man of African blood; that the said Emilia had never been acknowledged according to law, and, even if she had been, the acknowledgment was absolutely void because in violation of a prohibitory law. The court held, in substance, that the capacity of Emilia to inherit would have to be determined by the laws in force at the date of the death of the mother in 1879; that, under such laws, there would have been no legal impediment to the marriage of Melasie with Emilia’s father, even if he was a colored man; and that the dormant acknowledgment was vivified and validated by the constitutional and legislative provisions which had removed the legal impediments to the marriage of the father and mother. But in the case at bar, when the decedent departed this life in the year 1904, marriages between white persons and persons of color were and had been prohibited for 10 years. Act No. 54, p. 63, of 1894. This amendment of article 94 of the Civil Code of 1870 reads as follows:
“Marriage between white persons and persons of color is prohibited, and the celebration of all such marriages is forbidden and such celebration carries with it no effect and is null and void.”
If, as held in the Lange and Hebert Cases, supra, the capacity of the petitioner to inherit is to be determined by the laws in force at the time of the death of his mother (Civ. Code, art. 950), then he has no capacity to inherit his mother’s estate.
Act No. 68, p. 96, of 1870, providing for the legitimation of natural children by notarial act, was intended to remove the bar of incapacity of color or servitude at the time of conception, provided that the parent make the required declarations before a notary public and two witnesses. Civ. Code, art. 200. Act 210, p. 2V8, of 1868, is a similar statute as to invalid marriages and the legitimation of the children thereof. Both acts are conditioned on the parents making the requisite declarations in the manner and form prescribed by the statute.
The mother of the petitioner did not avail herself of the benefit of either validating statute. Hence the law prohibiting the acknowledgment of children whose parents were incapable of contracting marriage at the time of conception is applicable to this case. Civ. Code, art. 204.
This conclusion renders it unnecessary to consider the other issues presented by the pleadings.
*187 It is therefore ordered that the judgment appealed from be reversed, and that the suit of George Gamble be dismissed, with costs in both courts.
Their Honors, the CHIEF JUSTICE and Mr. Justice NICHOLLS, concur.