39 So.2d 845

**STATE v. DE LAVALLADE et al.**

No. 38575.

Feb. 14, 1949.

Bolivar E. Kemp, Jr., Atty. Gen., Carroll Buck, Asst. Atty. Gen., M. E. Culligan, Asst. Gen. and William A. Porteous, Jr., Second Asst. Atty. Gen., for appellant.

John H. McSween and Isaac Wahlder, both of Alexandria, for defendants-appellees.

O'NIELL, Chief Justice.

John B. Lafargue died intestate on May 27, 1943. His succession was opened a few days later and in due course of administration all of the property of the estate, with the exception of some household furniture appraised at $200, and a city lot in Alexandria appraised at $7,000, was reduced to cash. After deduction of all debts and charges a balance of $1,095.27 was distributed among six persons claiming to be the heirs at law, namely, Emma DeLavallade, Modjeska Hithe, Leon Beize, Percy Castron, Velanise Mary Metoyer and Jules Joseph Castron, Jr. They presented a petition to the court on September 15, 1943, alleging that they, Emma DeLavallade, Modjeska Hithe, Leon Beize and Jules Castron, Sr., deceased, represented by his three children, Jules Joseph Castron, Jr., Percy Castron and Velanise Mary Metoyer, were the natural brothers and sisters of the decedent and were his only heirs. They alleged that the succession had been completely administered, and they prayed that they should be recognized as the legal heirs of the decedent and be sent into possession of his estate uncondi-tionally as owners. They prayed further that the administratrices, Emma DeLavallade and Modjeska Hithe, should be discharged and their bond cancelled. An ex parte judgment was rendered accordingly on that day.

On August 22, 1946, the State of Louisiana instituted this suit against the parties claiming to be the heirs of John B. Lafargue, to have the judgment recognizing them as his heirs and sending them into possession of his estate annulled. The state prayed also for a judgment in solido against the administratrices and the surety on their bond, the Fidelity and Deposit Company of Maryland, for the $1,095.27, which had been distributed among the parties claiming to be the heirs of Lafargue in the succession proceedings. The surety was cited as a defendant. The state alleged that Lafargue was the child of an illicit union between a negro woman and a white man and was conceived and born at a time when intermarriage between the races was prohibited by law. The state alleged also that Lafargue was never legally acknowledged and in fact was legally incapable of being acknowledged, and that the defendants, who had themselves formally recognized as the heirs of Lafargue had perpetrated a fraud upon the court by representing that they were the natural brothers and sisters of Lafargue, or were their representatives, when they well knew the facts and circumstances concerning Lafargue's parents. The State

averred therefore that the succession was a vacant succession and hence that the property had escheated to the State.

The defendants filed an exception of no cause or right of action, a plea of estoppel, and a plea of prescription of one year. The Fidelity and Deposit Company of Maryland filed also a plea of prescription of two years. The exceptions and pleas were by consent tried together, on January 11, 1947. The judge maintained the exception of no cause or right of action and therefore found it unnecessary to rule on the other exceptions. The state is appealing from the decision.

The exceptions were tried on a stipulation of facts, as follows: John .B. Lafargue's mother, Mary Lafargue, was a negress and was unmarried when he was conceived and born. His father was an unmarried white man. Lafargue was born in 1864. He was baptized in that year in a Roman Catholic church at Mansura, Louisiana, as the child of Mary Lafargue. His father's name is not given in the baptismal certificate.

■ Whether the petition does or does not state a cause and right of action depends primarily upon the question whether John B. Lafargue could have been acknowledged legally between 1864, the time of his birth, and 1870, or the time when the Revised Civil Code was adopted with its prohibition against acknowledgment of an illegitimate child by parents who were incapable of intermarriage when the child was conceived. The defendants contend that he was a natural, or legally acknowledged child, and that they are therefore his heirs under the provisions of article 923 of the revision of the Civil Code of 1870. The state contends that since the capacity of an heir is determined as of the time when the succession is opened, and since under the law as it existed then John B. Lafargue could not be legally acknowledged he could not be, in law, a natural child, or one from whom his illegitimate brothers and sisters could inherit. The objection to that argument is that it gives to article 204 of the Civil Code of 1870, a retroactive effect; that is, the effect of bastardizing a child who had been validly acknowledged before article 204 was adopted. It is declared in article 8 of the Civil Code that the laws should not be given a retroactive effect. That policy of the law could not be more timely invoked than in a case where, as here, to hold otherwise would result in bastardizing a child after he or she has been raised to the status of a natural child by being duly acknowledged. It is therefore our opinion that, if John B. Lafargue was validly acknowledged prior to the adoption of article 204 of the Civil Code of 1870, he was a natural child, within the meaning of article 923 of the Civil Code.

It is argued for the state that even under the provisions of the Code of 1825 John B. Lafargue was incapable of being acknowledged legally. Our jurisprudence is the other way. Lange v. Richoux, 6 La.

560; Compton v. Prescott, 12 Rob. 56; Casanave v. Bingamen, 21 La.Ann. 435; Succession of Hebert, 33 La.Ann. 1099. It is true that when John B. Lafargue was conceived, his parents could not have contracted marriage legally because of article 95 of the Civil Code of 1825. But article 222 of the Civil Code of 1825 did not prohibit the acknowledgment of an illegitimate child by parents who were incapable of intermarriage when the child was conceived, as does article 204, the corresponding article of the revision of the Code of 1870. Article 222 of the Civil Code of 1825 prohibited acknowledgment only in cases of adulterous or incestuous connections.

The state relies upon certain expressions in Succession of Gravier, 125 La. 733, 51 So. 704, which suggest that the Compton Case was decided erroneously because the court overlooked Act No. 37 of 1831. What the court overlooked in the Succession of Gravier was the distinction between legitimation and acknowledgment. Act No. 37 of 1831 refers only to legitimation, not acknowledgment.

The state also relies upon article 914 of the Code of 1825, which is article 920 in the Code of 1870. The article declares:

"Bastard, adulterous or incestuous children shall not enjoy the right of inheriting the estates of their natural father or mother, in any of the cases above mentioned, the law allowing them nothing more than a mere alimony."

Apparently the reasoning is that in distinguishing between bastard children on the one hand, and adulterous or incestuous children on the other hand, the article assumes that there is a disability which arises from some other cause than the fact that the child was conceived of an adulterous or incestuous connection. But we must observe that the English text of the article is not an exact translation of the French, which controls the Code of 1825. Without speculating upon the support which the state might have derived from the article if it had been translated accurately, it is sufficient to say that the French text, "Les batards adulterins ou incestueux ne jouissent pas du droit" etc., should be translated thus: "Adulterous or incestuous bastards shall not enjoy the right" etc.

There is no doubt that John B. Lafargue was acknowledged by his mother, generally though informally, to be her son. The stipulation on which this case was submitted, contained a baptismal certificate stating that John B. Lafargue was the son of Mary Lafargue. That, however, is not conclusive proof, for there is no proof that Mary Lafargue was a party to the baptising or was even aware of the contents of the baptismal certificate. But in the stipulation of facts there is incorporated the record of the succession proceedings, as evidence for the trial of the exceptions.

And in that record are the affidavits of four individuals swearing that Mary Lafargue always treated John B. Lafargue as her son, and that he was generally known to be her son. The question which would be most serious if it were now a new one is the one which is presented by the State's contention that an informal acknowledgment by the mother of a bastard as her child is not sufficient to elevate the child to the status of a natural child, in the light of articles 202 and 203 of the Civil Code. But the question is not a new one. It was decided, after a very thorough consideration and discussion of the subject, in Taylor v. Allen, 151 La. 82, 91 So. 635, that such an informal acknowledgment by the mother of a bastard child was sufficient to lift the status of the child to that of a natural child, provided of course the child was neither an incestuous nor an adulterous child. The writer of this opinion in the instant case handed down a dissenting opinion in Taylor v. Allen, but the prevailing opinion in that case has been cited with approval at least twice by this court. See Murdock v. Potter, 155 La. 145, 99 So. 18; Succession of Tyson, 186 La. 516, 172 So. 772. We have concluded therefore that these decisions should be considered as having settled the question finally.

The judgment is affirmed.

PONDER, J., does not take part.