187 So.2d 503 (1966)
R. E. HIBBERT, Plaintiff,
v.
William MUDD et al., Defendants and Appellees,
State of Louisiana, Defendant and Appellant.
No. 1704.
Court of Appeal of Louisiana, Third Circuit.
June 2, 1966.
Rehearing Denied June 29, 1966.
Jack P. F. Gremillion, Atty. Gen., John L. Madden, Asst. Atty. Gen., Baton Rouge, Sidney P. Landry, Jr., Sp. Counsel to Atty. Gen., Lafayette, for defendant-appellant.
*504 Domengeaux & Wright, by D. Mark Bienvenu, Lafayette, for defendants-appellees.
Bailey & Mouton, by W. C. Hollier, Lafayette, for plaintiff-appellee.
Before TATE, SAVOY and CULPEPPER, J.
CULPEPPER, Judge.
This is a concursus proceeding instituted by plaintiff, R. E. Hibbert, as owner of an oil, gas and mineral lease granted to him in 1959 by Edna Mudd Anderson and under which lease gas and condensate are now being produced. Impleaded as defendants having conflicting claims to royalties payable under the lease are (1) alleged natural brothers and sisters, and their descendants, (hereinafter referred to as the "Mudd group") of the lessor, who died intestate in 1961, and (2) the State of Louisiana, which claims there are no heirs and that it is entitled to the property by escheat. The trial judge granted a motion for summary judgment recognizing the Mudd group as owners of the property. The State appealed.
At the outset, we will state the law on summary judgments. LSA-C.C.P. Article 966 provides for summary judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." Our jurisprudence has already established several principles under this statute. In passing on a motion for summary judgment, the court should not attempt to determine any factual issue, but rather should determine only whether there is a genuine issue of material fact. The burden is on the mover to show there is no genuine issue of material fact and all doubts must be resolved against the granting of a summary judgment. Kay v. Carter, et al., 243 La. 1095, 150 So.2d 27; Aymond v. Missouri-Pacific Railroad Company, 179 So.2d 461 (3rd Cir. La.App.1965); Acadia-Vermilion Rice Irrigating Company, Inc. v. Broussard, 185 So.2d 908 (3rd Cir. La.App., 1966); Brown v. B & G Crane Service, Inc., 172 So.2d 708 (4th Cir.).
The applicable law governing inheritance between natural brothers and sisters is succinctly set forth in 7 Loyola Law Review 123-124 (1954), with citation of authority for the matters at issue here added by us in parentheses:
"The natural brothers and sisters of the deceased, or their descendants, inherit from the natural child whose parents predeceased him. The requisites necessary for such inheritance are: (1) the deceased natural child must have left no descendants, legitimate or acknowledged; (2) the natural parents of the deceased must have predeceased him; and the natural parents cannot be considered civilly dead in cases in which they are barred from inheriting by virtue of their failure to acknowledge their natural children in accordance with (Civil Code) article 203; (3) the natural child deceased must have left no surviving spouse, as the wife inherits to the exclusion of all natural relations of the husband, and the husband inherits to the exclusion of all of the natural relations of the wife except her duly acknowledged illegitimate children; and (4) there must have been acknowledgment, either formal or informal, by the common parents of not only the natural brothers and sisters but also the natural child deceased. (Succession of Gravier, 125 La. 733, 51 So. 704 (1910); State v. DeLavallade, 215 La. 123, 39 So.2d 845 (1949); Dupre v. Caruthers, 6 La.Ann. 156 (1851); Bourriaque v. Charles, 107 La. 217, 31 So. 757 (1902)) Brothers and sisters of the half-blood have the same right to claim the succession as those of the whole blood. (Lange v. Richoux, 6 La. 560 (1834); Succession of Bonner, 192 La. 299, 187 So. 801 (1939).) * * * Naturally no rights of inheritance exist in cases in which either the surviving or the deceased natural *505 brother or sister could not be acknowledged under the law. Thus the natural brothers and sisters could not inherit from their deceased natural sister who was an adulterous bastard and hence barred from being acknowledged."
Considering these requisites in the order listed, there is no issue as to the first three, i. e.: (1) the deceased natural child, Edna Mudd Anderson, left no descendants; (2) her natural father, Frank Mudd, predeceased her and her natural mother, Agnes Sinclair, survived her, but neither ever formally acknowledged her in accordance with LSA-C.C. Article 203 and hence neither could inherit from her; (3) she left no surviving spouse, her husband, Louis Anderson, having predeceased her. But, the State contends there is a genuine issue of material fact as to requisite (4) listed above, i.e., whether there was ever an informal acknowledgment by the common parents of these natural brothers and sisters. The State also contends, and plaintiff's petition alleges, that the natural father was a white person and the natural mother a person of color, a Negro, and hence a marriage between them was prohibited by LSA-C.C. Article 94; that, therefore, no acknowledgment was possible under LSA-C.C. Article 204 which provides:
"Such acknowledgment shall not be made in favor of children whose parents were incapable of contracting marriage at the time of conception; however, such acknowledgment may be made if the parents should contract a legal marriage with each other."
Based on the pleadings, affidavits and other evidence in the record, the trial judge found there was no genuine issue as to the fact that there was an informal acknowledgment by Agnes Sinclair of her natural children. He recognized there was a genuine issue as to whether the union between Frank Mudd and Agnes Sinclair was miscegenous but found this issue not material, i. e., that even if the union was miscegenous the parents could acknowledge their children. The case relied on by the district judge was Goins v. Gates, 93 So.2d 307 (1st Cir. La.App. 1957, writs refused). This case will be discussed in more detail hereinafter.
We find it unnecessary to discuss the State's contention that there is a genuine issue of fact as to whether these natural children were ever informally acknowledged by their common parent, Agnes Sinclair. We have concluded, as the trial judge did, that there is a genuine issue as to whether Frank Mudd was a white person and Agnes Sinclair a Negro. Unlike the trial judge, we think this issue is also material. We have concluded that if the union was miscegenous, no acknowledgment of the children was possible. We are not bound by the Goins case, rendered by our esteemed brethren of the First Circuit Court of Appeal, but we are bound by LSA-C.C. Article 204 and a long line of jurisprudence from our Supreme Court, holding, in the language of Article 204, that "[s]uch acknowledgment shall not be made in favor of children whose parents were incapable of contracting marriage at the time of conception;".
Typical of the many cases in this line of jurisprudence is Succession of Davis, 126 La. 178, 52 So. 266 (1910). There, a natural child sought to inherit from his mother on the grounds of informal acknowledgment. The facts showed that this child was born in about 1865 of a union between a free white man and a woman of color, a slave. At the time of conception Article 182 of the Civil Code of 1825 prohibited marriage between free persons and slaves and between free white persons and free persons of color. The argument was made that because the Civil Code of 1870 abolished all distinctions between persons on account of race, color or previous conditions of servitude, necessarily Article 204 of the Civil Code of 1870 did not intend to prevent acknowledgment of children whose parents were, because of racial differences, incapable of *506 contracting marriage at the time of conception. The court rejected this argument, holding:
"Article 222 of the Code of 1825, prohibiting the acknowledgment of children produced from an adulterous or incestuous connection, was broadened so as to read:
"`Art. 204. Such acknowledgment shall not be made in favor of children whose parents were incapable of contracting marriage at the time of the conception.' "Hence, under the plain letter of the Civil Code of 1870, there is only one class of illegitimate children that can be acknowledged, namely, the issue of persons capable of contracting marriage at the time of conception. Such children are properly called `natural,' a species of the class, `illegitimate,' and the only kind that can be legitimated."
In Succession of Davis, it was also argued (and this is the basic holding of the Goins case) that Act No. 68 of 1870 (now LSA-R.S. 9:391) allowing natural fathers and mothers to legitimate their children by notarial act, provided there existed at the time of conception no other legal impediment to the marriage except those resulting from color or slavery, was intended to remove the bar against acknowledgment of miscegenous children. The court likewise rejected this argument holding:
"Act No. 68, p. 96, of 1870, providing for the legitimation of natural children by notarial act, was intended to remove the bar of incapacity of color or servitude at the time of conception, provided that the parent make the required declarations before a notary public and two witnesses. Civ.Code, art. 200. Act 210, p. 278, of 1868, is a similar statute as to invalid marriages and the legitimation of the children thereof. Both acts are conditioned on the parents making the requisite declarations in the manner and form prescribed by the statute.
"The mother of the petitioner did not avail herself of the benefit of either validating statute. Hence the law prohibiting the acknowledgment of children whose parents were incapable of contracting marriage at the time of conception is applicable to this case. Civ.Code, art. 204."
Other cases holding, or recognizing, that acknowledgment cannot be made in favor of children whose parents were prohibited from marrying at the time of conception by racial differences, bigamy, incest, etc. are: Turner v. Smith, 12 La.Ann. 417 (1857); Price v. Ray, 14 La.Ann. 697 (1858); Succession of Fletcher, 11 La.Ann. 59 (1856); Prieto v. Succession of Prieto, 165 La. 710, 115 So. 911 (1928); Succession of Gravier, 125 La. 733, 51 So. 704 (1910); Delpit, et al. v. Canal Bank & Trust Company, 143 La. 298, 78 So. 565 (1918); Murdock v. Potter, 155 La. 145, 99 So. 18 (1923); Jung, et al. v. Doriocourt, et al., 4 La. 175 (1832); Succession of Yoist, 132 La. 309, 61 So. 384; Succession of Segura, 134 La. 84, 63 So. 640; Succession of Vance, 110 La. 760, 34 So. 767; Lathan v. Edwards, 121 F.2d 183 (5th Cir. 1941).
Now let us consider Goins v. Gates, supra, on which the Mudd group relies. There, the natural child of a union between an Indian mother and a Negro father sought to inherit from the mother. The child had been informally acknowledged by its mother. The opinion does not expressly state, but it must have been a fact, that the child was conceived after Act 220 of 1920 (now LSA-R.S. 9:201) prohibiting marriage between persons of the Indian race and persons of the colored and black race. Without citing or attempting to distinguish LSA-C.C. Article 204 or the above cited jurisprudence from our Supreme Court, the court stated the law should be more liberal in favor of acknowledgment of illegitimate children. It then held that LSA-R.S. 9:391 (Act 68 of 1870), allowing natural fathers and mothers to legitimate their natural children by notarial act, provided no impediment to their marriage existed except *507 those resulting from color, necessarily included the right to informally acknowledge such children. No case is cited supporting this holding. Despite the persuasive arguments presented in the Goins case by our brethren from the First Circuit, we feel we are bound by LSA-C.C. Article 204 and the established jurisprudence of our Supreme Court, until that court or the legislature sees fit to change the law.
We are aware that our Supreme Court denied a writ of certiorari in the Goins case; and that, generally, such denial signifies approval of the principles stated in the decision of the lower court. Lockwood v. Kennedy, 44 So.2d 176 (2nd Cir. La.App. 1950). However, the principles involved here were not squarely set forth in the Goins case. As noted above, LSA-C.C. Article 204, expressly prohibiting acknowledgment of children whose parents were incapable of marriage at the time of conception, was not mentioned; nor was the long line of jurisprudence applying this statute as written. We do not believe that by the mere denial of the writ, our Supreme Court intended to hold LSA-C.C. Article 204 of no effect; or to overrule the established jurisprudence cited above.
An argument is made that the legislative history of LSA-C.C. Article 204 shows the legislature intended this codal article to apply only to incestuous and adulterous marriages, not to miscegenous unions. Article 26 of the Civil Code of 1808, and Article 222 of the Code of 1825, both prohibited acknowledgment only of "children born from an incestuous or adulterous connexion." These articles were broadened in 1870 by the adoption of LSA-C.C. Article 204 to prohibit acknowledgment of all children "whose parents were incapable of contracting marriage at the time of conception." It is true that from 1870 to 1894 there was no statutory prohibition against miscegenous marriages. But when the legislature adopted Act 54 of 1894 prohibiting marriage between white and colored, and later Act 220 of 1920 prohibiting marriage between Indians and Negroes, how can it be seriously argued the legislature did not know of existing Civil Code Article 204; and did not intend that article to apply to these miscegenous marriages. Article 204 is written in very clear and unambiguous language. It applies to all marriages which the legislature from time to time sees fit to declare unlawful by reason of adultery, bigamy, miscegeny, various degrees of incest, etc. Even in Goins v. Gates, supra, the court recognized this and sought to evade Article 204 on other grounds.
A case cited and relied on by the Mudd group is Murdock v. Potter, 155 La. 145, 99 So. 18 (1923). There the natural child of a white man and a woman of color sought to inherit from the mother. The facts showed that the child was born in 1889, during the period from 1870 to 1894 when there was no prohibition against marriage between white persons and persons of color. The child was also informally acknowledged by the mother before the passage of Act 54 of 1894, which prohibited marriage between white persons and persons of color. The court held that since the child was born at a time when the parents were capable of marriage, he could be and was acknowledged. The court refused to give retroactive effect to Act 54 of 1894 so as to render the acknowledgment invalid. We fail to see how the Mudd group finds comfort in the Murdock case. Actually, the holding simply follows the above cited jurisprudence that the test for acknowledgment is whether the parents were capable of marriage at the time of conception.
An additional argument made briefly by the Mudd group on appeal is that our State statutes prohibiting intermarriage between the races and discriminating between the modes of acknowledgment of children conceived at a time when their parents were incapable of contracting marriage, are unconstitutional and in violation of the equal protection clauses of the United States Constitution. Counsel for the Mudd group *508 cites "Irregular Successions in Louisiana", 7 Loyola Law Review 94, at page 107, which discusses this issue and points out that the Supreme Court of the State of California, Perez v. Lippold, 32 Cal.2d 711, 198 P.2d 17 (1948), has held such statutes unconstitutional. However, no case is cited from our own Supreme Court of Louisiana, or from the Supreme Court of the United States, holding such statutes unconstitutional. Under the circumstances, we are constrained to follow the rulings of our own Supreme Court of Louisiana.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that this case be remanded to the district court for further proceedings in accordance with law and the views expressed herein. All costs in the lower court, as well as the costs of this appeal, will await a final determination of the case.
Reversed and remanded.

Dissenting Opinion.
TATE, Judge (dissenting).
I respectfully dissent. With great respect for my brothers of the majority, its decision is in direct conflict with the latest expressions of another circuit and of our state Supreme Court. The harsh result reached by the majoritydisinheriting natural brothers and sisters of a decedent in favor of having the decedent's property pass by escheat to the Stateis in my opinion not at all required by any Louisiana legislation and is in fact contrary to the specific intent of the only Louisiana legislation directly pertinent, as I hope to show below.
In so holding, our majority refuses to follow the commonsense 1957 decision of our brothers of the First Circuit in Goins v. Gates, 93 So.2d 307, the latest decision on the question by some, three decades. The Supreme Court denied writs of review which had been sought as to this decision, stating in its unreported 1957 decision, Docket No. 43480: "On facts found by Court of Appeal there is no error in the judgment complained of." (Italics ours.) In view of this direct conflict between the circuits in the decision of the question of law, presumably the Supreme Court is required by our state constitution to issue writs of review. Louisiana Constitution, Art. VII, Section 11. Nevertheless, the writer by this dissent desires to set forth additional reasons why Goins v. Gates was correctly decided.
In the first place, let us narrow down what is at issue: We are not concerned with Louisiana's statutory prohibition against an interracial marriage; nor with any alleged discouragement of immorality through barring inheritance by illegitimate children or by their natural brothers and sisters (which is ordinarily permitted by Louisiana's general law). The question for decision is simply whether Louisiana law prohibits the recognition of natural (i. e., illegitimate but informally acknowledged) brothers and sisters as irregular heirs of their dead sister because their father was white and their mother is colored.[1]
Actually, in the only code provisions directly pertinent to inheritance by natural children, Civil Code Articles 917-920, inheritance by incestuous or adulterous children only is prohibited, not inheritance by miscegenous children. Article 920; State v. De Lavallade, 215 La. 123, 39 So.2d 845 (1949). As will be shown, the majority errs to find that an 1894 amendment to the Civil Code which only forbids racial intermarriage, should be stretched in legislative effect so as also to bar acknowledgment of and inheritance by miscegenous children in reliance upon inapplicable or overruled decisions of ancient vintage. The judicial misapplication to the acknowledgment status *509 of a statute designed only to regulate the marriage status has produced the unreasonable and inconsistent interpretation of the majority that miscegenous children cannot be acknowledged to inherit, even though the legislature has never so provided.
Under the uncontradicted showings and finding below, the decedent's brothers and sisters who seek recognition as her heir were all born of the same union, all raised in the same house by the same mother, and were in every ordinary sense the decedent's full brothers and sisters. However, the union of their parents was not sanctified by marriage; nor could it be under the law of Louisiana, which prohibits marriage between white and Negro parents, Article 94 of the Civil Code of 1870, as amended by Act 54 of 1894.
The decedent and her brothers and sisters were all acknowledged as her own by their mother. In holding that such acknowledgment is invalid and that miscegenous children can never be acknowledged so as to inherit from their parents or their siblings (even though by express statute, LSA-R.S. 9:391 they can be legitimated for such purposes), the majority relies upon the first portion of Civil Code Article, 204, which remains unchanged since its adoption by the legislature in 1870:
"Such acknowledgment shall not be made in favor of children whose parents were incapable of contracting marriage at the time of conception * * *."
As will be shown in more detail, in its statutory context at the time of enactment in 1870, the specific intention of this Article was to prevent acknowledgment only of incestuous or adulterous children, not of miscegenous illegitimates. It was thus designed merely to continue in effect the equivalent provisions of the Civil Codes of 1808 [2] and 1825.[3]
Louisiana legislation had prohibited miscegenous marriages between 1808 and 1870[4] and as well as from 1894 to date.[5] Nevertheless, during all these years, the Louisiana legislature had never prohibited the acknowledgment of illegitimate miscegenous children nor their inheritance from their fathers, mothers, or natural brothers or sisters[6]; and even now the legitimation of miscegenous children is specifically permitted by statute, LSA-R.S. 9:391.
Because interracial marriages have been prohibited by the 1894 amendment of another Civil Code provision, the majority bases its decision upon a judicial assumption that the meaning of Article 204 was also changed by this legislation on another topic, the majority deducting miscegenous children can no longer be acknowledged. However, this is merely a judicial assumption; as I shall point out, the legislature itself has not so provided and in fact the legislative intent cannot reasonably be presumed to be such.
At the time Article 204 was originally enacted in 1870, interracial marriages were not prohibited. See Article 94 of Code of *510 1870 as originally adopted. Thus, as actually enacted by the legislature, there was absolutely no substantive enactment by the legislature, absolutely no legislative intent, by Article 204 to forbid acknowledgment of miscegenous children. The sole actual intent of the legislation was to prohibit the acknowledgment of incestuous and adulterous bastards only; that is, to continue unchanged the acknowledgmentbar law since 1808, which had expressly permitted acknowledgment of miscegenous children. See State v. De Lavallade, cited above, also Footnotes 4 and 5.
In holding that Article 204 now additionally bars acknowledgment of miscegenous children, the only legislative change relied upon is the amendment of Article 94 of the 1870 Civil Code by Act 54 of 1894. This enactment pertinently provided only: "Marriage between white persons and persons of color is prohibited, and the celebration of all such marriages is forbidden and such celebration carries with it no effect and is null and void."
But this statutory change, it can be seen, was expressly limited to the prohibition of interracial marriages. This legislation did not by its terms refer in the least to any prohibition of the acknowledgment of miscegenous children, such as had been permitted by Louisiana law since our earliest days. It is a mere judicial assumption or deduction that, by the substantive prohibition of interracial marriages through the amendment of Article 94, the legislature also intended to change the substantive meaning of Article 204, which up until then at least was intended substantively to prohibit the acknowledgment only of adulterous and incestuous, but not of miscegenous, children.
We should recognize, then, that any change in the meaning of the identical wording of Article 204 does not result from any express legislation so providing: It results rather from a judicial deduction to this effect; and this deduction need not be accepted if demonstrated to be unsound or beyond the legislative intent. See Geny, Method of Interpretation and Sources of Private Positive Law (LSLI Translation, 1963), passim (e. g., Sections 101, 106, 107).
The judicial deduction of implied consequences of legislative or technological change is often proper, being an assumption that the legislature would have accorded that changed meaning to the wording of the original enactment in the light of its changed statutory or technological context. Prudhomme v. Savant, 150 La. 256, 90 So. 640, discussed 22 La.L.Rev. 734-735 (1926). But, as Geny above-cited and the authorities below-cited show, the judicial function does not require the blind application of legislative provisions when the legislature itself clearly did not intend for them to apply to the substantive question before the court for decision:
A statute should not be applied mechanically according to its literal meaning, when reference to its legislative history and the circumstances under which it was enacted indicate it was not legislatively intended to regulate the question now before the court for decision. Sanders v. Hisaw, La.App. 1 Cir., 94 So.2d 486, certiorari denied; mooney v. American Automobile Ins. Co., La.App. 1 Cir., 81 So.2d 625; Planiol, Civil Law Treatise (LSLI Translation, 1949), Volume 1, Sections 216, 224. Also, where by its literal meaning or rigid application a statute would be extended to regulate a situation never intended by the legislature, the letter of the statute must yield to the actual legislative intention. Emmons v. Agricultural Ins. Co., 245 La. 411, 158 So.2d 594; Dore v. Tugwell, 228 La. 807, 84 So.2d 199.
In the light of the entire statutory history and the statutory context of Article 204, including the legislature's failure to change other related statutory provisions, the 1894 amendment of Article 94 should clearly be restricted to its terms, i. e., prohibiting interracial marriage only; plainly, the legislature did not intend additionally by this *511 1894 act to prohibit the acknowledgment of miscegenous children:
1. Since at least 1808 Louisiana law had consistently permitted acknowledgment of such children, even during the period from 1808-1870 when interracial marriages were prohibited. No sound reason can be ascribed for supposing that, by legislation by terms restricted to prohibiting interracial marriages, the legislature also intended a radical departure from the previous settled inheritance policy of this state, which had consistently permitted acknowledgment of miscegenous children,[7] especially since the legislature then and at no time since has prohibited legitimation of (and thus inheritance by) miscegenous children, specifically authorized by statute (see 2 below).
2. By Act 68 of 1870, 3rd E.S. (now LSA-R.S. 9:391), legitimation of natural children by notarial act was expressly authorized where the only impediment to the marriage of their parents had been those resulting from race. It has specifically been held and is in fact admitted that the 1894 amendment of Article 94, prohibiting intermarriage between white and colored persons, did not have the effect of repealing or changing the substantive meaning of the 1870 statute (now LSA-R.S. 9:391), which thus continues to permit legitimation of miscegenous children despite the prohibition since 1894 of miscegenous marriages. Succession of Segura, 134 La. 84, 63 So. 640 (1913); Succession of Yoist, 132 La. 309, 61 So. 384 (1913).
The latest Louisiana Supreme Court opinion cited in the majority opinion pertinent to the present issue is Murdock v. Potter, 155 La. 145, 99 So. 18 (1923). There, the court stated, 99 So. 20-21: "* * * Since, therefore, Act No. 54 of 1894 does not repeal or affect the right of a father or mother of illegitimate children to legitimate them by notarial act, and thereby give them the status of forced heirs, it would be inconsistent to hold that the act prevents the father or mother of such children, one of the parents being white and the other colored, from acknowledging them, and thereby giving the children the status of irregular heirs, since legitimation, when it may take place, not only creates a higher class of heirs than mere acknowledgment creates, but necessarily includes acknowledgment." (This is essentially the holding in Goins v. Gates, La.App. 1 Cir., 93 So.2d 307, as to which the Supreme Court in 1957 denied writs with the observation that the court of appeal committed no error in its judgment.)
3. Additionally, Article 920 of the Civil Code of 1870, which prohibits inheritance only by adulterous or incestuous (but not by miscegenous) children, has remained unchanged by the legislature to date. See State v. De Lavallade, 215 La. 123, 39 So.2d 845 (1949).[8] See also Civil Code Article 1488, prohibiting natural parents from disposing of property in favor of their incestuous or adulterous children (except for the alimony necessary to their sustenance), but not containing a similar prohibition as to miscegenous children.
In summary, it seems to me plain that, considering the entire statutory context, when in 1894 the legislature prohibited interracial marriages, it did not intend additionally to change the settled meaning of Article 204, which had always permitted acknowledgment of miscegenous children. The Article thus still continued to do *512 so after the 1894 enactment. To prohibit acknowledgment alone, while continuing to permit legitimation of and inheritance by miscegenous children, is so inconsistent and unexplainable as to be an absurd and unreasonable meaning.
To reiterate, this inconsistent and unreasonable meaning is the result of judicial deduction merely, not of any legislation specifically altering the former substantive law which permitted acknowledgment of or inheritance by miscegenous children. We should therefore not construe Article 204 according to its present literal meaning as changed from its originally intended substantive regulation, where the changed "meaning" results solely from enactment of subsequent legislation on another question. We should instead construe the enactment in the light of its specific legislative meaning at the time it was enacted, since to extend its meaning by reason of subsequent legislation on another topic produces inconsistent and unreasonable consequences.
I think the trial court's granting of the motion for summary judgment was plainly correct and should be affirmed.
Since no constitutional issue is raised by this construction of Article 204 in accord with its specific and true legislative intent, I need only indicate constitutional issues implicit in a contrary construction. It is sufficient to state that, regardless of whether the Louisiana law prohibiting interracial marriage is constitutional in the light of current constitutional interpretations by our higher courts, it is plain to me beyond a doubt that Article 204 is unconstitutional if it is construed to prohibit acknowledgment of or inheritance by children simply because their father is white and their mother is Negro. Since such illegitimate children could have inherited if both parents were white or if both parents were colored, under the jurisprudence the denial to them of their right to inherit from their parents and from one another on the sole ground that their father was white instead of Negro, amounts to an arbitrary classification on the grounds of race such as is prohibited by the Fourteenth Amendment to the United States Constitution, which, inter alia, forbids denying any persons the equal protection of the state laws on the ground of race. McLaughlin v. State of Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964).[9]
The decisions relied upon by the majority at 187 So.2d 506 above are actually not in point: The Turner and Price cases are based upon special slavery legislation; Succession of Fletcher and Succession of Prieto concerned adulterous bastards, as did Jung v. Doriocourt and Lathan v. Edwards; Succession of Gravier, Delpit v. Canal Bank & Trust Co., and Succession of Vance concerned insufficiently acknowledged or unacknowledged illegitimate children; and Succession of Yoist and Succession of Segura permitted legitimation of miscegenous children. While some dicta favorable to the appellant's contention may be drawn from a few of these decisions of several decades ago, they do not decide or discuss the issues before us for decision now. They are not authority for the majority's decision.
Of the cited cases only two discuss principles presently pertinent: Murdock v. Potter, 155 La. 145, 99 So. 18 (1923) and Succession of Davis, 126 La. 178, 52 So. 266 (1910).
In Succession of Davis, a Negro mother had informally acknowledged her miscegenous son before 1870, when miscegenous children could be acknowledged only formally. She had never seen or heard of him *513 since 1868. The suit concerned this son's attempt to be recognized as her irregular heir. The court dismissed his claim, the actual holding (quoted in the majority opinion) being that he had never been acknowledged by his mother with the formalities required by law at the time of any acknowledgment. Any incidental discussion that under Article 204 the mother could not have acknowledged her son if she had tried to, is, of course, purely dicta.
Even so, in Murdock v. Potter some thirteen years later our Supreme Court at 99 So. 21 expressly overruled Succession of Davis insofar as it suggested that Act 54 of 1894 (barring interracial marriage) prevented acknowledgment of miscegenous children conceived before the act, which was the only question at issue in the Murdock case. The authority of Succession of Davis is further weakened by expressions in State v. De Lavallade, 215 La. 173, 39 So.2d 845 (1949). Additionally, the cited Murdock decision contains dicta, earlier quoted herein, that, since Act 54 of 1894 did not affect the right to legitimate miscegenous children, it could not reasonably be interpreted to have the effect of preventing acknowledgment, a lesser status.
I conclude, therefore, that the dicta in the 1910 decision of the Supreme Court in Succession of Davis does not require us to afford to Article 204 of the Civil Code of 1870 a meaning which the legislators clearly did not intend at the time of its enactment, namely, to forbid the acknowledgment of miscegenous children. Such a holding is inconsistent with later jurisprudence on the question, and such a statutory meaning is plainly inconsistent with the contextual legislative scheme, which permits legitimation of and inheritance by miscegenates.
The writer is reinforced in this view by the circumstance of the Supreme Court's apparent agreement with it in 1957, when it denied writs of review and held there was no error in the judgment of our brothers of the First Circuit in Goins v. Gates, 93 So. 2d 307, which was based upon the interpretation of the law to which the present dissent adheres. I think we should follow the holding in this Goins case, which is actually the only Louisiana decision which squarely passes upon the question at issue, and which moreover is in my opinion supported by the better reason and the weight of authority.
For the foregoing reasons, the writer respectfully dissents.

On Application for Rehearing.
En Banc. Rehearing denied.
TATE, J., dissents from refusal of rehearing.
FRUGE, J., votes for rehearing for reasons in Judge TATE'S dissent on merits.
NOTES
[1] Only in default of any regular or irregular heirs whatsoever is the property escheated to the State of Louisiana, LSA-Civil Code Arts. 919, 929, as the majority decrees to be the case here.
[2] Article 26: "Such acknowledgment shall not be made in favor of the children born from an incestuous or adulterous connexion."
[3] Article 222: "Such an acknowledgment shall not be made in favor of the children produced by an incestuous or adulterous connexion."
[4] Article 8, Civil Code of 1808; Art. 95, CC of 1825, which was repealed by omission of prohibition in Art. 94, CC of 1870 as originally enacted.
[5] Act 54 of 1894, amending CC Art. 94 (1870) to restore prohibition against interracial marriages.
[6] Despite dicta to the contrary in several post-1870 cases, some of which are relied upon by the present majority opinion, it is clear beyond a doubt that, although miscegenous marriages were prohibited from 1808-1870, nevertheless acknowledgment of and inheritance by miscegenous natural children was permitted during this same period. State v. De Lavallade, 215 La. 123, 39 So.2d 846 (1949).
[7] State v. De Lavallade, 215 La. 123, 39 So.2d 845; Casanave v. Bingham, 21 La. Ann. 435 (1869); Compton v. Prescott, 12 Rob. 56 (1845). See also Succession of Hebert, 33 La.Ann. 1099 (1881).
[8] As the cited De Lavallade case notes, due to an erroneous or clumsy translation from the original French text, the opening phrase "Bastard, adulterous or incestuous children(,)', more properly reads: "Adulterous or incestuous bastards shall not enjoy the right," etc. of inheriting. See 39 So.2d 847; see also "Law Review Commentaries" in the annotations to Article 920 in West's LSA Civil Code, citation to Dubuisson, 5 Loyola L.J. 163 (1924).
[9] This decision invalidated as unconstitutional a state statute which prohibited cohabitation only of unmarried white and Negro persons, noting that the question of whether there is an arbitrary or invidious discrimination on the ground of race depends upon whether the classifications drawn in the statute are reasonable in the light of its purpose.